MARY E. BRADLEY, in equity,

*vs.*

SHERBURNE R. MERRILL, and others.

Cumberland.    Opinion January 11, 1896.

*Equitable Mortgage.    Redemption.    Improvements.    Trust.    Notice.    Practice.*
*Parties.*

In determining whether a transaction constitutes an equitable mortgage, the criterion is, whether, on looking through the forms in which the parties have put the result of their negotiations, the real transaction was in fact a security or a sale.

If the transaction was intended to secure one party for claims against the other, it will be considered an equitable mortgage and not a sale.

Notes, or other evidences of indebtedness, are not necessary to render a transaction an equitable mortgage.

If there is in fact an indebtedness or liability secured by the transaction, that is sufficient.

Where a party purchases real estate that is subject to a trust, he cannot be considered a bona fide purchaser without notice if he has actual notice of such trust.

Actual notice, as used in such case, does not mean actual notice of the fact, but notice of facts which would or ought to put him upon inquiry in reference to it.

In the redemption of real estate mortgaged, the mortgagee will not be allowed for permanent improvements in the way of new structures not necessary for the preservation of the property and made without the consent of the mortgagor.

The only exceptions to this rule are: (1) Where the improvements have been made by the mortgagee under a bona fide but mistaken supposition that he was the absolute owner, and that the equity of redemption had become barred; or (2) where the mortgagee had reason to believe from the form of his conveyance, or the circumstances of his purchase, that he was the absolute owner.

A complainant in a bill in equity may discontinue as to parties upon the payment of costs; or without, if not claimed by the respondent.

*Knapp* v. *Bailey*, 79 Maine, 195, affirmed.

ON REPORT.

Bill in equity, heard on bill, answers and proof.

This was a bill in equity brought by Mary E. Bradley against Sherburne R. Merrill, John W. Lane, John F. Proctor and Edward Hasty, for the redemption of the house and lot, No.

776 Congress street in Portland, from, as she claimed, equitable mortgages. The bill was filed May 8, 1888; the defendants subsequently answered severally, and replications were filed to all the answers. At the April term, 1893, the cause was set for hearing on the bill, answers and proof and a hearing had. The complainant, against the objection of the solicitor for Hasty, discontinued as to Edward M. Rand, executor of John W. Lane, who had died since the filing of the bill, as to John F. Proctor, and as to Irving W. Drew et als., executors of Sherburne R. Merrill, who had died since the bill was filed, and the court allowed the discontinuance, to which allowance the defendant Hasty duly excepted. The testimony was taken out before Mr. Justice WALTON and was reported to the law court.

The written agreement given to the plaintiff, by defendant Merrill, and referred to in the opinion and arguments of counsel is as follows :

"Whereas Mary E. Bradley, of Portland, is desirous of purchasing the real estate situated on the southerly side of Congress street, in Portland, which Henry Pennell, of Gray, conveyed to me by deed bearing date June 5, 1883. Now, therefore, in consideration that the said Mary E. Bradley has agreed to thoroughly repair said house and put it in good condition to let to my satisfaction at her expense, I hereby agree to give and do hereby give to her the option of purchasing said property after one year, and within three years from the date hereof, time being of the essence of the contract, upon the following terms and conditions : that after one year and within three years from the date hereof the said Mary E. Bradley, her heirs or assigns, pay therefor the sum of six thousand dollars, with compound semi-annual interest on said sum from this date, at the rate of seven per cent per annum, until paid, together with all such sums as I shall expend upon or on account of said property for repairs, taxes or otherwise, with interest on said sum at the same rate from the time of such payment.

"And I further agree that said Bradley, her heirs or assigns, may at any time after one year and within three years pay any portion of said sum to be credited on account of said purchase,

all such payments, however, to be forfeited in case she shall fail
to complete said purchase within the time aforesaid, and in case
said Bradley, her heirs or assigns, shall complete said purchase
within the time aforesaid, I am to account to her or her assigns
for the net rent and income of said property that I may receive,
deducting any commission that I may have to pay for collecting
the same, provided and upon the express condition that all the
foregoing terms and conditions are fulfilled and complied with
on the part of the said Bradley, within the time herein above
limited, I will, upon receiving the sums aforesaid, with the
interest aforesaid, within the time aforesaid, convey to said
Bradley the real estate aforesaid by good and sufficient deed of
quitclaim."

"Dated this 5th day of June, A. D., 1883.

"Witness, T. F. Johnson.                         S. R. Merrill."

The case appears in the opinion.

*J. H. and J. H. Drummond, Jr.*, and *D. A. Meaher*, for
plaintiffs.

*M. P. Frank and P. J. Larrabee*, for Edward Hasty.

The defendant Hasty's title is derived from two sources, by
deed from Sherburne R. Merrill dated June 12, 1886, recorded
June 17, 1886, and by deed from John F. Proctor and John W.
Lane, dated June 17, 1886, recorded June 19, 1886. Plaintiff
claims that these two deeds are equitable mortgages only so far
as she is concerned. The defendant by no means admits such
to be the fact.

Assuming, for the sake of argument, that Merrill and Proc-
tor had each, an equitable mortgage merely, not a legal mort-
gage containing the usual conditions, and that the plaintiff had
an undoubtable title to an equity of redemption; still, under
the facts and circumstances, as they are set forth and sustained
by proof in the case, she would be in no condition to set up her
title or right of redemption as against this defendant. The
case shows that a real estate broker, Gardner, in Portland had
the property for sale, and that through him this defendant was
obtained as a purchaser of the property, and was introduced to

the plaintiff's husband, who was her agent, as the person having the disposal of the property. After examining it, the defendant made an offer of seventy-two hundred and fifty dollars, a fair and full price, for the property, provided he could have a good title for that sum. It does not appear that up to this time anything had been said by any of the parties as to how the title stood. The plaintiff, however, accepted this offer, promising that defendant should have the property, and a good title to it, for that sum. It does not appear anywhere in the case, except from the testimony of the plaintiff and her husband, that the plaintiff had ever rescinded this bargain or had in any way expressed her purpose not to carry it out in good faith, until the morning that the deed passed. Hasty acting upon the faith of that agreement, having proceeded to pay Merrill, who held what was in form a legal indefeasible title, even if Merrill's claim had been in reality but an equitable mortgage, and Proctor's claim an equitable mortgage, he would have had a right to proceed and clear up the title by paying off the other incumbrances, and the plaintiff would be estopped from setting up her equitable title against him. Merrill was in possession under a title in form covering, at that time, the entire fee, and under his deed from Merrill, defendant had full legal title and possession of the premises.

This case is more than a simple agreement that the defendant should have the property and a good title to it for the sum named. The amount of the various claims was stated and the figures were shown to Bradley before the defendant proceeded to pay any of the money, and no objection was made to the correctness of this statement. So that even if Merrill and Proctor had each held equitable mortgages, but in form the legal indefeasible title, Hasty had so far executed his parol agreement of purchase, and Bradley and his wife (he all the time acting as her agent) had so far assented to his proceedings or permitted him to act upon the faith of their promise, that it would have been too late for them to have set up a mere equitable title as against him.

In equity, therefore, the plaintiff ought to be required to

release to the defendant on payment of the balance, which he offered to pay, rather than the defendant to her, if she has any color of title. Such is the conclusion reached on the assumption that defendant's title is merely that of the holder of equitable mortgages, which in form cover the entire fee with an equitable right of redemption in the plaintiff, known to all parties concerned.

It is based on these propositions, which the facts in the case abundantly established, viz: 1. A parol agreement by plaintiff to sell to defendant by good and perfect title the property in question for the sum of seventy-two hundred and fifty dollars, a full and fair price.

2. The amount of the outstanding claims or equitable mortgages stated to plaintiff's agent, and the balance remaining, made known without any objection being raised on his part to its correctness.

3. No notice of the rescission of the agreement to sell until one of the claims, the first and largest, had been paid, and a deed taken from the person in possession holding the apparent full legal title, under which defendant had possession and full legal title to the premises.

The rule is well established that equity will compel specific performance of even a parol agreement to convey real estate when there has been a partial performance, such as payment of purchase money, and taking possession of premises, especially if improvements or repairs have been made. *Woodbury* v. *Gardner*, 77 Maine, 71; *Douglass* v. *Snow*, Id. p. 91; 2 Story's Eq. (13 Ed.) p. 73, note (a) p. 74, chap. 18, § 759; 1 Pom. Eq. §§ 921, 1409; *Pulsifer* v. *Waterman*, 73 Maine, p. 244.

It presents, therefore, a stronger case than we should have if the parol agreement had been reduced to writing, and we were seeking to compel a specific performance. The defendant simply asks to be let alone, to be left undisturbed in the title which he has. The plaintiff agreed that he should have a good title, and he has it, unless the plaintiff is allowed to upset it by interposing what she claims to be an equitable title.

The court will not permit a party, thus defrauding, to shield himself behind the statute of frauds, the very purpose of which is to prevent fraud, to use a title, thus fraudulently retained, in violation of his parol promise, assured, and for which, in reliance upon that promise, a large sum was paid. "The following principle of equity jurisprudence," says the court in *Creath* v. *Sims*, 5 How. p. 204, "may be affirmed to be without exception, that whosoever would seek admission into a court of equity must come with clean hands; that such a court will never interfere in opposition to conscience or good faith." And again, in *Wilson* v. *Bird*, 28 N. J. Eq. 352: "One who comes into a court of conscience must come with skirts free from blame in the transaction." *Meason* v. *Kane*, 63 Pa. St. 335; *Stevens* v. *McNamara*, 36 Maine, 178; *Noble* v. *Chrisman*, 88 Ill. 186, 198-9; *Cheeney* v. *Arnold*, 18 Barb. 434; 2 Herm. Estop. and Res. Adjud. §§ 935, 936; 1 Pom. Eq. pp. 433-4, §§ 398, 404, 780.

But the defendant's title is not that of the holder of either legal or equitable mortgages. He has a full indefeasible title to the premises. The plaintiff never intended or claimed to have any other right than the right expressed in her contract, a right to purchase on certain terms, within a certain time. She and her husband always so understood it. Hence their pretense that they had made a tender to Woodman as agent of Merrill. Their understanding shows that the agreement actually was a contract of sale, not a pledging of the property, as security for a loan. Equity will not interfere to make a contract for the parties different from what they themselves intended it to be at the time they made it. It can be invoked to require the parties to act in good faith and to carry out their original intention. If the parties themselves did not make a mortgage in fact, that is, if the writing made and acts done by the parties did not constitute in reality a mortgage, and the parties did not intend to make a mortgage, a court of equity will not make it for them. The notes which the mortgage to the bank secured were neither taken by nor transferred to Smith. The transaction itself treated the foreclosure as complete and as vesting the

full title in the bank. The agreement of Smith with Bradley, wherein time is expressly made to be the essence of the contract, shows clearly that there should be no right of redemption, and that the transaction should not be construed as a mortgage.

The terms of the instrument itself, its date, and the fact that it was given to Mary E. Bradley instead of James Bradley, who held the Smith contract, indicate that the parties themselves intended that it should not, in any event, be construed as a mortgage. No notes were taken, no loan purports to have been made, no debt was kept alive.

These rights were simply a right or option of purchase within a certain time, in which she had the space of two years to exercise her option and take the property or not, as she might elect. The fact that the consideration was increased in each of the contracts only indicates what the fact really is, that the property itself situated in the western part of the city had been rising by reason of improvements in that part of the city. The plaintiff asks the court to so find on her own and her husband's uncorroborated testimony, in contradiction not only of the terms of the deeds under which the various parties held the title, given by other parties, not by the plaintiff, but in direct contradiction of the written instrument drawn specially to show what the intention of the parties was as regards the Bradleys.

Where there is a written instrument of defeasance, even when the holder of the written agreement was the grantor, the criterion in determining whether the transaction constitutes a mortgage is whether there was a subsisting debt or obligation. *Reed* v. *Reed*, 75 Maine, pp. 271, 272; Pom. Eq. § 1195; *Rich* v. *Doane*, 35 Vt. 125; *Conway* v. *Alexander*, 7 Cranch, p. 237; *Macauley* v. *Porter*, 71 N. Y. 173; *Glover* v. *Payn*, 19 Wend. 518; *Flagg* v. *Mann*, 14 Pick. 467, pp. 478, 479; *Slutz* v. *Desenberg*, 28 Ohio St. 371.

In the cases cited, the party seeking relief was himself, the grantor. Here the title comes from a different source. There was no previous debt, no payment of a previous debt of the party seeking relief, no new debt created by any of the papers drawn to express the agreement and undertaking between the

parties, and the defendant and those under whom he claims had continued in possession and in control of the property receiving the rents.

The plaintiff by her deed of bargain, sale and release recorded July 9, 1884, divested herself of all shadow of title that she could claim ever to have had, especially so far as the outside world was concerned. This was the object of the deed. No writing of any kind was given back to plaintiff as was the case when she assigned the agreement or option of purchase. The understanding was, that Lane should have the full control and entire disposition of all the rights the plaintiff ever had so that he could sell, if possible, and close up the whole matter.

The deed from Merrill to defendant was of the property, not of grantor's right, title and interest, and contains covenants of warranty against all persons claiming by, through or under him. This deed was taken after the facts in regard to the title had been learned so far as could be learned, by the exercise of such diligence as the law requires, and the consideration expressed in it, $6182.69, was paid, before any notice or claim on the part of the Bradleys that the proceedings were not entirely satisfactory to them ; and we submit that the defendant under that deed was a bona fide purchaser without notice of any title other than that held under the Proctor deed from Lane. *Rangley* v. *Spring*, 28 Maine, p. 138.

The case shows that the defendant, as soon as he had the first intimation that plaintiff claimed that her title was only that of the holder of equitable mortgages, went immediately to her counsel, imformed him of the amount he had already paid for the property, and told him she could have it for that sum. He wanted no trouble about it, he desired to take no advantage whatever of the plaintiff, and did not intend that she should have any ground to claim that he had taken any advantage. He had previously rendered a written statement of the account, by exhibiting to Mr. Bradley the figures showing the amounts that he was to pay, and the amounts he actually paid, and which he informed plaintiff's counsel he had paid. And the amount for which he was willing to transfer the property to plaintiff was

the same as shown by the figures exhibited to Bradley at the time of the purchase.

Where a party has a title, not on its face a mortgage, and he is in possession under a title, which he is justified in believing is a perfect title, though not an unquestionable title, for very few titles are such, but a title which a man, by exercising ordinary prudence and investigation would be justified in setting up as a good, indefeasible title, and such title is asserted in good faith, but yet turns out in the end to be subject to an equitable right of redemption in another, which he has resisted in good faith, the rule is different. All that equity requires in such cases is honesty of purpose, reasonable prudence and good faith. Pom. Eq. § 1241; *McSorley* v. *Larissa*, 100 Mass. 270; *McLaughlin* v. *Barnum*, 31 Md. 425, p. 453, et seq.; *Preston* v. *Brown*, 35 Ohio St. 18, p. 32; *Miner* v. *Beckman*, 50 N. Y. 337; *Canal Bank* v. *Hudson*, 111 U. S. 66, pp. 82, 83; 2 Jones on Mortgages, § 1128.

It may be claimed that defendant did not act in good faith because he was notified that his title was only that of an equitable mortgage. He was not so notified, he was only notified that plaintiff so claimed. Is one to cease from all improvement because some one claims or notifies him that he claims the title to the property is not good? If such were the case, one might easily be made the victim of any malicious foe. Defendant was notified that plaintiff claimed she had a right to redeem. But she never made known on what fact she claimed the right, never exhibited any writing or agreement that she held, or notified defendant that she had one.

But if she can redeem at all, she can only redeem by virtue of the Merrill contract or "option" only, because that "option" in connection with the deed to Merrill, under all the circumstances, shall be regarded as constituting in equity, a mortgage. She can redeem, therefore, only by paying in accordance with the terms of that writing. In order to be entitled to a conveyance under that writing, she is to pay the sum therein named, the rate of interest therein named, and "such sums as I shall expend upon or on account of said property for repair, taxes or other-

wise with interest on said sum at the same rate from the time of such·payment."

This defendant claims that, if plaintiff's title is all that she claims for it, she is in no condition to assert it in a court of equity against this defendant, inasmuch as in pursuance of her own parol agreement that he should have the premises by good title, for a sum specified, which he paid, before any notice of a rescission of that agreement, the larger part of the sum agreed to be paid, and took a deed which gave him a good title as against all the world, except the plaintiff. That it was implied-ly agreed between him and the plaintiff, through her husband, how the money should be paid, the amount to be paid Merrill, the amount to be paid Proctor, and the balance remaining being stated, and shown to plaintiff's husband, with no objection as to the amounts, nor the parties to receive them, and the defend-ant paid them accordingly; the first, before any claim of revo-cation was made; and the latter, because it was imposed as a condition upon the first, and because the defendant had agreed to pay it with the assent, as he supposed, of the plaintiff. If the plaintiff has any remedy at all, therefore, it is a remedy at law for the recovery of the balance of the purchase money.

*Messrs. Drummond and Drummond, and Mr. Meaher,* in reply.

The first position of the defendant is based on an estoppel, the facts for which do not exist. It assumes that the verbal trade was not rescinded and that plaintiff's husband impliedly agreed to the amount due as stated by defendant Hasty. The contract was never a binding one, and there was no part per-formance or payment to take it out of the statute. Defendant never attempted to carry it out, but instead ignored the plain-tiff's rights and attempted to buy the property from other parties who assumed to have the title to it. No conveyance of any rights plaintiff might have was prepared, and none contem-plated. The parties engaged in the transaction, after the title of record had been examined, determined to ignore the plaintiff and any claim she might have.

Mrs. Bradley had already the day before the deeds were passed, notified Gardner in the presence of her husband that she would not carry out the trade and was then seeking information for the purpose, not of notifying Hasty that she had withdrawn from the trade as the learned counsel for the defendant contends, but for the purpose of forbidding, by advice of counsel, Merrill and Proctor from transferring the premises to anybody. Is it at all likely, under the circumstances, that if Hasty had shown the figures to Bradley he would have assented to them?

If Hasty is truthful in his position that he never knew of the withdrawal of Mrs. Bradley from her offer to sell, and that she had consented to the figures that he claims to have shown her husband, his conduct was very strange. The natural thing to have done would have been to have had her present at the time of the transfer and have had the proper transfer from her of any rights she might have in consideration of the $132.31 that he has always kept for her, in order, as he says, to carry out his trade. Certainly no estoppel can arise under this state of affairs.

If defendant believed he was carrying out, not a trade with Merrill and Proctor, but one made with Mrs. Bradley, he would have taken measures to have had the complainant or her husband present at the time the transfers were made and have had a transfer from her. He claims that the agreement from Merrill to Mrs. Bradley had expired before the transfer from Merrill and that at that time Merrill had an indefeasible title to the premises; but to excuse his payment to Proctor of $935 he says Merrill insisted upon it. · What right had Merrill to insist upon the payment of part of the purchase price of the premises, as agreed to by Hasty and the complainant, to a third person who, according to Hasty's position, had at the time no interest in the property. If Hasty regarded himself as bound by the trade with Mrs. Bradley, and believed as he now claims that Merrill had the indefeasible title to the property with the rights of Mrs. Bradley and her assignees Proctor and Lane extinguished by limitation of the so called "option," why did he not

hold the balance of the $7250 after paying Merrill, for Mrs. Bradley instead of assuming to act for her in paying her debt without her consent and against her objection?

In every transfer of the property from the time the bank first transferred it to Smith, Mr. and Mrs. Bradley were given an agreement of reconveyance, thus showing that all the parties recognized that the Bradleys had some interest in the premises and finally, on one occasion, when a transfer was made, the Bradleys advanced money for repairs on the house, and at another, part of the consideration of the transfer was paid to Mrs. Bradley.

The words in the Merrill obligation "repairs, taxes or otherwise" do not aid the defendant. The word "otherwise" is by a well known rule of construction qualified by the words "repairs and taxes," and the legal construction of the clause is that the complainant was to pay such sums as Merrill expended upon or on account of said property for repairs, taxes or other things in the nature of repairs and taxes.

SITTING : PETERS, C. J., WALTON, EMERY, FOSTER, HASKELL, WHITEHOUSE, JJ.

FOSTER, J. Bill in equity for the redemption of a house and lot on Congress street in Portland from what is claimed to be equitable mortgages.

The rights of the parties to this litigation cannot be understood without recurring to some of the important and material facts which appear in evidence. Many of the minor details, though bearing distinctly upon the issues involved, must necessarily be omitted.

March 7, 1876, the complainant owned the premises in controversy, subject to a mortgage to the Maine Savings Bank. Afterwards the bank foreclosed the mortgage and obtained the fee in the property on July 13, 1879. On October 1, 1880, the complainant procured a conveyance of the premises from the bank to James H. Smith for the sum of $4500, the said Smith at the time giving to complainant's husband an obligation to

convey the premises to him upon the payment of that sum and interest.

On October 4, 1882, complainant procured the conveyance of the premises from Smith to Henry Pennell in consideration of $4667.75, Pennell at the time giving the complainant an obligation to convey the premises to her upon the repayment of that sum and other expenses, under certain conditions.

On June 5, 1883, complainant procured the conveyance by Pennell to Sherburne R. Merrill for the sum of $6000, Merrill giving her an agreement in writing to reconvey the premises to her upon the payment of that sum and interest, and upon certain conditions.

In each of these transactions the money was advanced at the request of the complainant and for her benefit.

The deeds in these several transactions were duly recorded soon after they were delivered, but the only obligation that was recorded was the agreement from Merrill to complainant, which was recorded February 8, 1884, eight months after its date.

August 3, 1883, while complainant still held the agreement from Merrill, she borrowed from John W. Lane two hundred and fifty dollars for which she gave two notes of one hundred and twenty-five dollars each, and assigned to him the agreement from Merrill as security for the payment of the notes. In this transaction John F. Proctor acted for Lane and as his agent, at the same time giving back an agreement to reassign the Merrill obligation upon the payment of the notes. Afterwards, on July 7, 1884, complainant borrowed from Lane two hundred and fifty dollars more, for which she gave her note, and as security for the same she conveyed by quitclaim deed all her interest in the premises, Lane at the same time agreeing to reconvey upon the payment of the amount due upon all the notes. Interest was deducted from all these notes from their date to the time they became due.

On December 10, 1884, Lane, without the knowledge or consent of complainant, conveyed by quitclaim deed all his interest in the premises and in the Merrill obligation to said Proctor, the deed not being recorded till June 5, 1886. May 1, 1886, before the deed from Lane to Proctor had been recorded

and before complainant had any knowledge of it, Lane gave complainant an agreement to reconvey the premises.

Thus we find that at the time the property was conveyed by Pennell to Merrill, the complainant had an equitable interest in the property sufficient to support a mortgage. *Stinchfield* v. *Milliken*, 71 Maine, 567. She procured the conveyance of the property from Pennell to Merrill for her benefit. The money was borrowed from Merrill to pay Pennell, together with an additional amount needed for other purposes. The conveyance from Pennell to Merrill was made to secure the amount she had borrowed as shown by the obligation to convey given by Merrill to the complainant. No notes or other evidences of indebtedness were necessary to render the transaction an equitable mortgage. If there was in fact an indebtedness or liability secured by the transaction that was sufficient. *Reed* v. *Reed*, 75 Maine, 264, 272.

Transactions like these constitute equitable mortgages. The criterion always is whether the transaction was intended to secure one party for claims against the other. As was said by the court in *Reed* v. *Reed*, supra : "It is, therefore, a question of fact, whether, on looking through the forms in which the parties have seen fit to put the result of their negotiations, the real transaction was in fact a security or sale."

So far, therefore, as Lane and Merrill were concerned, these transactions constituted equitable mortgages with the right of redemption in the complainant. To be sure, prior to the time Lane gave the complainant the written agreement to convey, he had conveyed his rights in the premises to Proctor by quitclaim deed, but Proctor at that time knew all about the transactions between Lane and the complainant and her husband. In fact he either negotiated them himself, or was present at the time the loans were made, and, therefore, he could acquire no rights against the complainant except such as Lane held. He had not only notice but actual knowledge of complainant's rights.

Such was the condition of the title to the property when Edward Hasty, the respondent in this suit, became interested in the premises and purchased from Merrill, Proctor and Lane

by quitclaim deeds delivered June 17, 1886. He claims to be a bona fide purchaser of the property without notice, and denies any knowledge of the transactions with Merrill, Proctor and Lane except such as he found from the records of the instruments recorded. But he had knowledge of the obligation from Merrill to the complainant, as he states in his answer, and he is precluded from pleading ignorance of its effect in law.

Was he a bona fide purchaser without notice, or did he have such notice of the rights of the complainant in the property that he acquired only the rights of his grantors?

His attention was first called to the matter by Gardner, a real estate agent, and whom he knew to be such at the time. The agent had had the property placed in his hands, either to procure a lease, or for sale, by the husband of the complainant, and knew that the complainant claimed to be the owner of it, so entered it upon his books, and understood that Merrill held a mortgage upon it, and, moreover, that Proctor and Lane were in some way connected with it. He introduced Hasty to complainant's husband who was acting for her and who claimed to have the disposal of the property. After looking the property over with the husband, an offer of $7250 was made by Hasty provided he could get a good title. The husband concluded to accept the offer. Thereupon, Hasty went to Gardner's office and Gardner told him he did not know who owned the property, and advised him that he had better search the records and see. Hasty employed counsel to look up the title, and was advised that Merrill had given the complainant an agreement by which she had the privilege of purchasing upon certain conditions within a specified time, but that the time had nearly expired. The testimony from complainant and her husband is that a tender had been made of $6000, to Merrill through an alleged agent of Merrill, two days before the expiration of the time named in the obligation, but it was not accepted by the party as he claimed that he was not Merrill's agent; also, that on the 16th of June, the day before the deeds to Hasty were executed, they called at Gardner's office and notified Gardner and Hasty that complainant had changed her mind and would not sell for the sum offered by Hasty.

This is denied by Hasty. However, the next morning, June 17, Merrill and Hasty met at Proctor's office, and from there went to an attorney's office and Merrill delivered the deed to Hasty. While they were there, and after the Merrill deed had been passed and the money paid, as claimed by Hasty, but before the deed from Proctor and Lane was delivered, the complainant and her husband came in and forbade the sale of the property. Subsequently, Hasty took the deed from Proctor and Lane, paying the former $935.

The respondent claims that nothing was said to him in reference to complainant having a writing from Lane, or having any interest in the property, except what was disclosed by the records, but that he kept $132.31, the balance of the $7250 after satisfying the Merrill claim of $6182.69, and Proctor's claim of $935, for the complainant and offered to pay it to her. This is his account of the transaction in brief. The complainant and her husband, on the other hand, testify that the sale was forbidden before the Merrill deed was passed.

From the evidence and circumstances surrounding the transaction we think the respondent must have had such notice of the claim of the complainant under the obligation from Merrill as to defeat the claim which he sets up of being a bona fide purchaser without notice, and, therefore, he must be held, so far as that instrument is concerned, to have taken only the rights of his grantor, viz : that of an equitable mortgagee.

The respondent admits that the complainant forbade the transfer of the property to him before the deed from Proctor and Lane had been delivered to him. His rights acquired under that deed would certainly be acquired with notice of complainant's interest, or such notice as would put him upon such inquiry that he could have learned what her interest was if he had been disposed ; and hence his claim against her under this deed can be only such rights as they held in the premises,— rights of second mortgagees.

The respondent admits that on the morning of June 17, 1886, when the deeds were passed, he met complainant's husband and notified him that he had learned that Merrill, Lane and Proctor had some claim upon the property and that he should have to pay

their claims before he could get a good title, and showed him the figures.

The complainant and her husband both assert that Hasty was notified, the evening before the deeds were passed, that she had changed her mind about the sale of the property and that she wanted to have her home and redeem it, and if he would loan her the money she would give him the preference in regard to the sale of it.

Taking all the transactions together and from all the evidence, we feel satisfied that the respondent must have had either actual knowledge of the complainant's rights in the property, or certainly such knowledge of the circumstances and facts as ought to have put him upon inquiry.

The respondent's title to the property was acquired by quitclaim deeds from Merrill, Proctor and Lane. In some courts it is held that such an instrument of conveyance does not make the grantee a bona fide purchaser without notice, (*Baker* v. *Humphrey*, 101 U. S. 494,) but in this State we have not gone to that extent, and it is held to be a circumstance only bearing upon the question. *Knapp* v. *Bailey*, 79 Maine, 195, 205 ; *Mansfield* v. *Dyer*, 131 Mass. 200.

Actual knowledge is not necessary. It is only necessary that a party should have actual notice of the trust. And actual notice as used in this connection does not necessarily mean actual notice of the fact itself, but notice of facts which would or ought to put him upon inquiry in reference to it.

The rule is thus stated by Bispham in his work on equity, on page 336 : "He is bound, if circumstances point out a path, to investigate, to follow it. If he makes no inquiries, the presumption is that he has improperly turned away from the knowledge of the true state of the case, and he is, therefore presumed, as a conclusion of fact, to know what he might have informed himself of."

And in the case of *Knapp* v. *Bailey*, supra, where this principle was directly before the court, the principle is so clearly stated that its application seems appropriate to the case under consideration. In the course of the opinion PETERS, C. J.,

says : "The doctrine of actual notice implied by circumstances (actual notice in the second degree) necessarily involves the rule that a purchaser before buying should clear up the doubts which apparently hang upon the title, by making due inquiry and investigation. If a party has knowledge of such facts as would lead a fair and prudent man, using ordinary caution, to make further inquiries, and he avoids the inquiry, he is chargeable with notice of the facts which by ordinary diligence he would have ascertained. He has no right to shut his eyes against the light before him. He does a wrong not to heed the 'signs and signals' seen by him. It may be well concluded that he is avoiding notice of that which he in reality believes or knows. Actual notice of facts which, to the mind of a prudent man, indicate notice, is proof of notice."

Under all the circumstances of the case, as disclosed by the evidence, we are satisfied that the respondent had such notice of the rights of the complainant in the property as estops him from claiming the protection afforded to a bona fide purchaser without notice, such notice as estops him from claiming any other rights than those of a mortgagee in possession, and leaves the complainant the right to redeem the premises from the mortgages.

The case shows that the respondent built a double house partly upon these premises and partly upon premises adjoining, the dividing line between the two lots coinciding with the partition wall between the two tenements.

In the statement of the account of the amount due on the mortgages is he entitled to an allowance on account of this house so far as it is upon the mortgaged property?

This house was commenced about two years after the respondent bought Merrill's interest and just prior to the time this bill in equity was filed. He had bought on the 17th of June, 1886, an equitable mortgage, together with such interests as Proctor and Lane had, with notice of the complainant's rights in the premises and of the character of her title in the same. Four days after this purchase, June 21, 1886, this complainant through her attorneys caused a demand in writing to be served upon him

for an account under the mortgages.  Within four days from the time of his purchase he not only had notice but actually knew that this complainant claimed that his title was only that of a mortgagee in possession.  Even if he did not know her precise rights he had knowledge of facts that were sufficient to put him upon inquiry.  Instead of having reason to believe that he was the absolute owner, he had every reason to believe that he was not, and could have readily learned his precise status to the property and the rights of the complainant had he seen fit so to do.  He could have easily protected himself.  Foreclosure was open to him, and after foreclosure no one could dispute his rights as absolute owner.  This he did not do.  He preferred to take the chances of the complainant's redeeming.  He knew, or ought to have known, had he exercised reasonable prudence, that he was only mortgagee of the premises, and that he had no right to add $3000 to the burden of redeeming the property, the cost of a new house that was neither necessary to the preservation of the property nor built with the consent of the mortgagor.

It is a well established rule that the mortgagee will not be allowed for permanent improvements in the way of new structures not necessary for the preservation of the property and made without the consent of the mortgagor.  He is entitled to allowance for all improvements and repairs necessary for the preservation of the estate, or to make the premises tenantable, but further than this he cannot go at the expense of the mortgagor without his consent.  *Ruby* v. *Abyssinian Society*, 15 Maine, 306; *Pierce* v. *Faunce*, 53 Maine, 351; *Sandon* v. *Hooper*, 6 Beavan, 246; 2 Jones on Mortgages, § 1126; Am. & Eng. Encyl. vol. X, "Improvements."

If the rule were otherwise it would be subject to great abuses, and would increase the difficulties in the way of the right to redeem, and would oftentimes be resorted to by unscrupulous mortgagees disposed to take advantage of the necessities of the mortgagor, as a means of defeating his power to redeem.

There are exceptions to the general rule as above stated; (1)

as where improvements have been made by the mortgagee under a bona fide but mistaken supposition that he was the absolute owner, and that the equity of redemption had become barred; or (2) where the mortgagee had reason to believe from the form of his conveyance or the circumstances of his purchase, that he was the absolute owner. *McSorley* v. *Larissa*, 100 Mass. 270; 3 Pom. Eq. § 1217, note 1.

But the case at bar does not fall within either of those exceptions. By taking the most ordinary precaution, the respondent could have readily ascertained what his title was and what his rights were. *Guckian* v. *Riley*, 135 Mass. 71, 73. A court of equity as a general rule will not relieve against the consequences of mere ignorance of law. Bispham on Eq. § 187.

Nor is this a case where the complainant has slept upon her rights and in silence seen the respondent make valuable improvements without objection, as in *Morgan* v. *Walbridge*, 56 Vt. 405. She was active in asserting her rights from the beginning. From the time when the negotiations with the respondent were progressing until she filed her bill, she was active, vigilant and persistent in claiming her rights and in obtaining a recognition of them by the respondent. Nevertheless, he persisted in refusing to recognize her rights and in acting in defiance of them, even after forbidden, and after a legal demand for accounting had been served upon him immediately after the purchase. It would be inequitable now to oblige her to assume the burden of permanent improvements made by the respondent with full knowledge of her claims and in defiance of her protests. In fact, it might practically in effect deny her the right to redeem.

The equities in this case are with the complainant, and in stating the account the permanent improvements in the erection of the new house should not be allowed.

The exceptions must be overruled.

The rule is, that the complainant can discontinue as to parties upon payment of costs; or without, if they are not claimed by the respondent. *Mason* v. *York & C. R. R.* 52 Maine, 82, 107.

The decree should be that the bill be sustained, that the respondent be ordered to render an account as mortgagee in possession, in accordance with this opinion, that the cause be sent to a master to determine the amount due to the respondent. Further decrees can be made on the coming in of the master's report.

*Bill sustained with costs.*