EDMUND M. ROWE

*vs.*

CHRISTOPHER C. HAYDEN

AND

BENJAMIN F. EATON

Penobscot.   Opinion, November 3, 1953.

*Matthew Williams,* for Plaintiff.

*Judson A. Jude,*

*B. M. Siciliano,* for Defendant.

SITTING: MERRILL, C. J., THAXTER, WILLIAMSON, TIRRELL, JJ. MURRAY, A. R. J. FELLOWS, J., did not sit.

MERRILL, C. J.  On appeal.  The plaintiff, Edmund M. Rowe, was the owner of certain real estate in the town of Garland, against which said town had filed tax liens.  The plaintiff had been negotiating with the town for the release of said real estate from the tax liens or its reconveyance to him.  The town, through its selectmen, had set a date within which time it would release or convey the land upon payment of taxes, interest and charges.

Just before the expiration of this time the plaintiff was taken sick and went to the Veterans Hospital in Togus.  He appointed the defendant, Christopher C. Hayden, his agent to obtain the money for him with which to settle with the town and free his property from the tax liens.

It is a reasonable inference from the testimony that Hayden attempted to borrow the money therefor for Rowe from the defendant Eaton.  Mrs. Hayden testified that she talked with Mr. Eaton alone and that she asked him if he was going to help Chris out buying the property.  Respecting this conversation, Mrs. Hayden said:— "He says he don't know, if he can get a paper and Rowe signs off it is a good investment, but he says he won't have nothing to do with Rowe."

From this testimony of Mrs. Hayden it is reasonable to suppose that Hayden had taken the matter up with Eaton and tried to get the money of Eaton for Rowe. Mr. Eaton was very evasive in his testimony and apparently tried to avoid admitting that he had any knowledge of Rowe's interest in the property. He did, however, admit that he requested Mr. Hayden to obtain some kind of a paper from Mr. Rowe.

Following this request by Eaton, Hayden had a power of attorney running from Rowe to himself prepared and executed. This power of attorney, which was under seal and acknowledged, was dated the 22nd day of January, 1952 and recorded in the Penobscot Registry of Deeds the following day. This power of attorney authorized Hayden "to lease or grant, sell or convey absolutely, and in fee simple, for such price and to such persons as he shall think fit, the following described real estate and particularly to cut and remove therefrom any and all wood growing thereon necessary, in his opinion, to provide funds for payment of taxes assessed against said property by the town of Garland: * * * And for me and in my name to mortgage the aforementioned property and to sell, execute, deliver and acknowledge such deeds and conveyances thereof, or any part thereof, as he shall think fit, hereby ratifying all leases, deeds and conveyances as shall be executed by my said attorney concerning the premises." The property described in the power of attorney is the property of the plaintiff here in question.

Following the record of this power of attorney, the defendant Hayden informed the defendant Eaton that he had obtained a paper from the plaintiff Rowe and had placed the same on record. So far as the evidence discloses, Eaton made no further or other inquiry as to the nature of the paper which Hayden had obtained, did not ask to see it and did not examine the record to find out its nature. This power of attorney as recorded clearly disclosed that Hayden represented the plaintiff as his agent, and that, with respect to

transactions concerning the title to the plaintiff's property, Hayden stood in a fiduciary relationship toward him. After this conversation between the defendant Hayden and the defendant Eaton, they proceeded to the office of the selectmen of the town of Garland where it was determined that the plaintiff's indebtedness to the town of Garland, upon the payment of which they would convey his property, amounted to $2,006.44. The defendant Hayden was also indebted to the town of Garland for $418.17 for taxes on certain property owned by him. Hayden was also personally indebted to the defendant Eaton in a sum approximating $1,500.00.

Thereupon, and at the defendant Eaton's request, the town of Garland conveyed the plaintiff's property and Hayden's own property to Hayden. This conveyance was by quit-claim deed of all right, title and interest of the town therein. Eaton advanced the sum of $2,006.44, the amount necessary to discharge the claim against the Rowe property, $418.17 to discharge the claim against the Hayden property, and took a mortgage from Hayden of the plaintiff's property and his, Hayden's, property to secure these sums, together with Hayden's other personal pre-existing indebtedness to Eaton, said sums amounting in all to $4,336.00.

After the plaintiff learned that Hayden had taken title to the property in his own name, and had mortgaged the same to Eaton not only to obtain money to pay what the plaintiff owed the town of Garland, but also to pay to the town of Garland certain taxes owed by Hayden to the town, as well as to secure Hayden's personal pre-existing indebtedness to Eaton, the plaintiff contacted both Hayden and Eaton.

Hayden claimed that he had bought the property for himself, that it was his own and that he would do nothing in the premises. Eaton claimed that he was entitled to hold the

property to secure the full amount of his mortgage. There-afterwards, the plaintiff brought the present bill in equity against Hayden to recover his property. Eaton was subsequently made a party thereto. Both Hayden and Eaton appeared and filed answers denying the plaintiff's rights. Although the defendant Eaton answered by the name of Benjamin *F.* Eaton, from his testimony it appears that his name is Benjamin *E.* Eaton. It was by that name he took as grantee in the mortgage here in question.

The court below filed a final decree directing Hayden to convey the equity of redemption of the plaintiff's property to the plaintiff. It also directed the defendant Eaton to account to the plaintiff in the sum of $130.00 for wood cut and removed from the land. It directed the plaintiff, Rowe, to pay to the defendant Eaton the sum of $2,006.44 paid by him to the town of Garland for the Rowe property, less the above amount of $130.00. Said payment to Eaton, together with nine months' interest, was to be made not later than six months from the date of the decree. The decree further provided that the defendant Eaton release and convey to the plaintiff Rowe any and all interest he may have in the above described Rowe property in Garland, upon payment by Rowe to Eaton of the balance as found due as aforesaid. The decree also granted certain injunctive relief against the defendant Hayden. The defendants Hayden and Eaton seasonably appealed from said decree. It is upon this appeal that this case is now before this court.

Upon the record of this case it is clear that the defendant Hayden stood in a confidential relationship toward the plaintiff. It is also clear that by taking the deed of the plaintiff's property from the town of Garland to himself, and by mortgaging the plaintiff's property together with his own to the defendant Eaton, as security not only for the amount of money advanced by Eaton which was used to free the plaintiff's property from lien but also as security for his, Hay-

den's, own personal indebtedness, both to the town and to Eaton, the defendant Hayden committed a fraud upon the plaintiff. The equity of redemption standing in his name is clearly charged with a trust in favor of the plaintiff. As between the plaintiff and the defendant Hayden, it is the equitable duty of Hayden to exonerate the plaintiff from all of the mortgage indebtedness in excess of the $2,006.44 advanced for the protection of his, the plaintiff's, property.

The defendant Eaton, so far as the plaintiff's property is concerned, claims, as mortgagee, to stand in the position of a purchaser for a valuable consideration without notice of the plaintiff's equities. If this claim were true, he would be entitled to assert his mortgage against the plaintiff's property for the full amount secured thereby.

It is provided by R. S. (1944), Chap. 154, Sec. 18 that:—

> "The title of a purchaser for a valuable consideration or a title derived from levy of an execution cannot be defeated by a trust, however declared or implied by law, unless the purchaser or creditor had notice thereof. When the instrument, creating or declaring it, is recorded in the registry where the land lies, that is to be regarded as such notice."

In the leading case of *Knapp* v. *Bailey*, 79 Me. 195, it was held that the notice referred to in this statute means "actual or constructive notice."

In the comparatively recent case of *Devine* v. *Tierney & Findlen*, 139 Me. 50 at 54, discussing the meaning of the word notice in R. S. (1944), Chap. 154, Sec. 18, then R. S. (1930), Chap. 87, Sec. 18, we said:—

> "Under the statute the notice which will defeat the title of a purchaser for a valuable consideration is actual notice either of the trust or of facts which would or ought to put him upon inquiry in reference to it. Where an intending purchaser has

actual notice of any fact sufficient to put him on inquiry as to the existence of *some right or title in conflict with that which he is about to purchase* he stands charged with notice of that which inquiry would have revealed by the exercise of ordinary diligence. This, in the judgment of the law, is actual notice inferred or implied as a fact from circumstances and the equivalent of actual notice proved by direct evidence. As to what facts are sufficient to excite inquiry in such a case and charge the purchaser with implied actual notice under the statute there is no hard and fast rule. They must be such facts as would lead a fair and prudent man with ordinary caution to make inquiry. *Knapp* v. *Bailey,* 79 Me., 195, 9 A., 122, 1 Am. St. Rep., 295; *Bradley* v. *Merrill,* supra." (Emphasis ours.)

This case, it will be noted, cited *Knapp* v. *Bailey, supra,* which is the leading case in this State on the interpretation of the word notice in this statute. In that case this court said:—

"The doctrine of actual notice implied by circumstances (actual notice in the second degree) necessarily involves the rule that a purchaser before buying should clear up the doubts which apparently hang upon the title, by making due inquiry and investigation. If a party has knowledge of such facts as would lead a fair and prudent man, using ordinary caution, to make further inquiries, and he avoids the inquiry, he is chargeable with notice of the facts which by ordinary diligence he would have ascertained. He has no right to shut his eyes against the light before him. He does a wrong not to heed the 'signs and signals' seen by him. It may be well concluded that he is avoiding notice of that which he in reality believes or knows. Actual notice of facts which, to the mind of a prudent man, indicate notice — is proof of notice. 3 Wash. Real Prop. 3d ed. 335. * * * As to what would be a sufficiency of facts to excite inquiry no rule can very well establish; each case depends upon its own facts."

The principles laid down in *Knapp* v. *Bailey* have been many times recognized by this court. See *Brown* v. *Reed*, 81 Me. 158 at 163; *Morey* v. *Milliken*, 86 Me. 464, 475; *Bradley* v. *Merrill*, 88 Me. 319 at 335, 336; *Coleman* v. *Dunton*, 99 Me. 121; *Hopkins* v. *McCarthy*, 121 Me. 27, 29; *American Realty Co.* v. *Amey*, 121 Me. 545 at 553, 555; *Shattuck* v. *Jenkins et al.*, 130 Me. 480, 484. The rule is well set forth in *Hopkins* v. *McCarthy*, 121 Me. 27 at 29, where we said:—

> "Actual notice and actual knowledge are not necessarily synonymous expressions. Actual notice is that which gives actual knowledge, or the means to such knowledge. It is a warning brought directly home to one whom it concerns to know. Actual notice may be either express or implied. It is express when established by direct proof. It is implied when inferable as a fact by proof of circumstances. 'Express actual notice' is its own definition. Implied actual notice is that which one who is put on a trail is in duty bound to seek to know, even though the track or scent lead to knowledge of unpleasant and unwelcome facts. *Knapp* v. *Bailey*, 79 Me., 195; *Bradley* v. *Merrill*, 88 Me., 319."

To multiply authorities would serve no useful purpose. Measured by the standards set forth in the foregoing opinions, Eaton had *notice* of the equities existing in favor of the plaintiff. There was, to use the words of *Knapp* v. *Bailey, supra*, "a sufficiency of facts to excite inquiry." To adopt the test set forth in *Hopkins* v. *McCarthy, supra*, the plaintiff was "put on the trail," he was "in duty bound to seek to know, even though the track or scent lead to knowledge of unpleasant and unwelcome facts."

Why the defendant Eaton did not follow the trail to *actual knowledge* we may never know. The opportunity to obtain *ample security* not only for the money presently advanced but also for Hayden's *substantial pre-existing indebtedness* to him, even though not sensed by him, may have dulled the

scent and have blinded his eye to the plain trail. This trail led to actual knowledge of the confidential relationship existing between the plaintiff and Hayden and would have disclosed the consequent equities of the plaintiff in any title to the plaintiff's property if acquired by Hayden.

Paraphrasing the words of Chief Justice Peters speaking for the court in *Knapp* v. *Bailey, supra,* we do not say that he did not believe he could legally take the mortgage here in question, "nor do we impute more than a want of caution and diligence. Men's interests spur their judgments to one-sided conclusions oftentimes. The great dramatist makes a character, reluctant to acknowledge the situation, say, 'I cannot dare to know that which I know;' while another, more quicksighted, because anxious to believe, exclaims, 'Seems, madam! Nay, it is. I know not seems.' One rejects proof on the clearest facts; the other accepts it on the slightest."

With the information which he actually had, and that which he not only could, but in the exercise of due care, should have obtained, either from the power of attorney itself or from the record thereof, Eaton had notice, within the meaning of R. S. (1944), Chap. 154, Sec. 18, of the confidential relationship existing between Hayden and the plaintiff and of the plaintiff's equitable title. He took his mortgage, so far as it covered the plaintiff's properties, subject to the plaintiff's equitable title thereto.

The defendant Eaton cannot in equity and good conscience assert his mortgage against the plaintiff's property in excess of the amount advanced by him to obtain the release thereof from the claim of the town of Garland against the plaintiff. To this extent the plaintiff had authorized Hayden to encumber the same.

The plaintiff is entitled (1) to a conveyance from the defendant Hayden of the equity of redemption of his property

described in the bill; (2) to a perpetual injunction against Hayden restraining him, his servants, agents, or attorneys from entering on the plaintiff's property, from cutting or removing any wood therefrom, or selling or conveying any of said property except to the plaintiff Rowe; (3) to a discharge of the Eaton mortgage, insofar as it constitutes an encumbrance upon his property, upon payment or tender to Eaton within six months of the date of the final decree of the sum advanced to obtain the conveyance of his property from the town of Garland, together with interest thereon, deducting therefrom any rents and profits received by Eaton. These matters were properly taken care of in the final decree entered by the justice below, which properly named the defendant Eaton, Benjamin *E.* Eaton in accord with the fact.

In that decree, however, appeared the following provision:— "Since the whereabouts of Hayden are unknown, a copy of this decree, certified by the Clerk of Courts and recorded in the Penobscot Registry of Deeds, will transfer record title of the above described Rowe property from Christopher C. Hayden to Edmund M. Rowe." This provision of the decree is unauthorized.

Equity acts *in personam* and not *in rem*. We have no statute which provides for the transfer of title by the mere recording of a decree in equity ordering the transfer. However, if the whereabouts of Hayden are still unknown, or if known and he is personally without the jurisdiction of the court, the court below, upon application therefor, will in aid of the decree appoint a master to make conveyance to the plaintiff of Hayden's title to the plaintiff's property. *Du Puy* v. *Standard Mineral Co.*, 88 Me. 202.

The time which the decree fixed within which the plaintiff should make payment to Eaton of the amount to which Eaton is equitably entitled, as a condition precedent to a release by Eaton of the plaintiff's property from his mort-

gage, has expired. Furthermore, the time for which interest upon the money is to be paid by the plaintiff to Eaton, due to the lapse of time since the filing of the decree below, should be adjusted.

The appeal is sustained only on the foregoing points, and the case remanded for entry of a decree modifying the final decree below in accordance with this opinion. In all other respects the final decree below is affirmed with additional costs for the plaintiff.

*So ordered.*