## AVCO DELTA FINANCIAL CORPORATION of Maine

### v.

## TOWN OF WHITEFIELD.

Supreme Judicial Court of Maine.

Oct. 24, 1972.

Richardson, Hildreth, Tyler & Troubh by Edward T. Richardson, Jr., William K. Tyler, Portland, for plaintiff.

Harold J. Shapiro, Jeffrey A. Smith, Gardiner, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WERNICK, Justice.

Plaintiff, as assignee of a second mortgage interest in certain real property situated in defendant town, has appealed from a decision by the Superior Court refusing issuance of a permanent injunction sought by plaintiff to prevent sale of the property.

Defendant claims the right to sell on the ground that it acquired good title as an incident of tax lien mortgage foreclosures allegedly valid under 36 M.R.S.A. §§ 552 and 941–948, inclusive.

The facts are presented by an Agreed Statement pursuant to Rule 74(r) M.R.C.P.

In 1964 Elsie C. Fowles executed a first mortgage on the realty running to the Gardiner Savings Institution. It was properly recorded. In 1965 she gave a second mortgage, likewise properly recorded, to Ruth L. D. Adams who, subsequently in the same year, assigned it to plaintiff.[1]

The assignment document does not expressly designate the location, by town or city, of the property but says that the assignment is of a certain mortgage on real estate

---

[1] The assignment was, initially, to Security Financial Corporation to which plaintiff because a successor as of May 17, 1966 under the name, Avco Delta Financial Corporation of Maine. Commencing with February 12, 1970 the name was changed to Avco Financial Services, Inc. No. 240.

Since these differences of legal entities and names are without significance to our decision, we seek to avoid confusion by use of the one designation, "plaintiff."

". . . given by ELSIE C. FOWLES to . . . Ruth L. D. Adams . . . recorded in Lincoln County Registry of Deeds . . . Book 615, Page 253."

The second-mortgage-assignment document was placed on record in the Lincoln County Registry of Deeds. In the "location" column of the index, however, (in which it is intended that there be indicated the town or city in which the property covered by the mortgage assignment is located) only a blank space appears.

Defendant town, on May 4, 1968 (more than two years after all of the foregoing events) filed, and appropriately recorded, a tax lien against the property for non-payment of the 1967 taxes. On May 5, 1969 a second tax lien for unpaid 1968 taxes was filed and properly recorded.

During the interval between the recording of the two tax liens the first mortgagee, Gardiner Savings Institution, under date of August 7, 1968, had given a Notice of Foreclosure to Elsie C. Fowles (as the mortgagor); it was recorded in Lincoln County Registry of Deeds on September 3, 1968. On August 5, 1969 (before purported foreclosure could possibly have been completed with legal validity since the one year redemption period would still have been running) Gardiner Savings Institution assigned its first mortgage rights to the plaintiff. The assignment was duly recorded August 11, 1969.

Defendant town had never given to plaintiff, as the holder of a second mortgage by assignment from Ruth L. D. Adams, "a true copy of the tax lien certificate[s]" placed on record on May 4, 1968 and May 5, 1969. Such copies, however, had been mailed to the first mortgagee, Gardiner Savings Institution, and the second mortgagee, Ruth L. D. Adams (in purported compliance with requirements of 36 M.R.S.A. § 942).

The failure of defendant to mail a true copy of the tax lien certificates to the plaintiff has become the central coil from which the issues of the present case are sprung.

Notwithstanding that the usual eighteen months redemption period might have expired, 36 M.R.S.A. § 943 confers upon one who has a mortgagee interest—and to whom ". . . the notice . . . for . . . mortgagee . . ." had ". . . not been given as provided in section 942, . . ."—a

". . . right to redeem the . . . real estate within 3 months after receiving actual knowledge of the recording of the tax lien certificate . . . ."

Asserting that the 36 M.R.S.A. § 942 notice had not been sent to it and that it had been without "actual knowledge" of the recorded tax lien certificates until April 6, 1970, plaintiff, within three months of that date, i. e., on May 18, 1970, tendered the full amount ". . . of the tax lien mortgage[s], together with interest and costs, . . ." (pursuant to 36 M.R.S.A. § 943).

Defendant town refused to accept the tendered payment. It maintained that the normal eighteen months redemption period had already expired (which is undisputed) and that plaintiff lacked the special right of redemption allowed by 36 M.R.S.A. § 943 —a proposition vigorously contested by plaintiff.

In support of its position defendant town presents two arguments: (1) in the present circumstances the town (by its tax collector) was without legal obligation under 36 M.R.S.A. § 942 to send a true copy of the tax lien certificates to the plaintiff and, hence, plaintiff is ineligible for the special redemption opportunity provided in 36 M.R.S.A. § 943; (2) in any event, since plaintiff on August 5, 1969 had taken an assignment of the first mortgage from Gardiner Savings Institution, plaintiff had thereby, and thereupon, acquired the means to learn of the recording of the tax lien certificates by the town—with the consequence that August 5, 1969 became the date on which the three months special re-

demption period contemplated by 36 M.R.S.A. § 943 commenced to run, and the tender by plaintiff on May 18, 1970 (more than nine months thereafter) came too late.

### 1.

■ The first of defendant's arguments rests on two underlying facts: (1) the failure of the second-mortgage-assignment instrument itself to contain an express designation of the municipality in which the real estate was situated, combined with (2) the ensuing omission of the "location" column of the index in the Registry to provide the information. On these facts defendant claims that plaintiff must be denied the status of a "record holder of a mortgage" entitled under 36 M.R.S.A. § 942 to receive "a true copy of the tax lien certificate[s]", and, hence, the condition precedent to allow plaintiff to qualify for the special redemption privilege afforded by 36 M.R.S.A. § 943 had failed to occur —i. e., that the town omitted to send to plaintiff the requisite notice of tax lien certificate.

Defendant's contention is untenable.

The provisions of 36 M.R.S.A. §§ 942 and 943 delineate a mechanism to achieve tax collections characterized by the concepts of a tax lien *mortgage* deemed *"strictly" foreclosed* by the mere expiration of a specified period of time after the occurrence of a particular event and on the basis of which, without more and automatically, a transfer of title to the municipality is achieved. Inhabitants of the Town of Warren v. Norwood, 138 Me. 180, 24 A.2d 229 (1941). See also: Inhabitants of the Town of Lincolnville v. Perry, 150 Me. 113, 104 A.2d 884 (1954).

Such features immediately suggest close analogy between the tax lien mortgage and foreclosure, as instrumentalities of property tax collections, and the real estate mortgage and "strict" foreclosure system operative under Maine law to provide security for, and enforcement of the payment of, loans of money.

The analogy is strongly confirmed by specific provisions of 36 M.R.S.A. §§ 942 and 943 delineating in detail the procedures to be followed, and the consequences which flow from various incidents of the procedures, including the following: (1) the tax collector "shall *record in the registry of deeds . . .*" the tax lien certificate; (2) at the time of said *recording* he "shall send . . . to each *record* holder of a mortgage . . . , a true copy" of the tax lien certificate and "[i]f the real estate has not been assessed to its *record* owner, . . . shall send . . . a true copy . . . to the *record* owner"; (3) the *"filing* of the tax lien certificate in the *registry of deeds* shall be *sufficient notice . . .* of the tax lien mortgage"; (4) ". . . within 18 months after the date of the *filing* of the tax lien certificate *in the registry of deeds,* the . . . tax lien *mortgage* shall be deemed to have been *foreclosed* and the *right of redemption to have expired*"; and (5) in the event of redemption within the conventional eighteen month period "the municipal treasurer or assignee *of record* shall prepare and *record* a discharge of the tax lien mortgage *in the same manner as is now provided for the discharge of real estate mortgages.*" (all emphases supplied)

■ The foregoing specifications reveal that, in its incorporation and adaptation of the loan security and collection devices of "mortgage" and "strict foreclosure" into the property tax collection sphere, the Legislature has relied heavily upon the functioning of the already existing real property recording system. We interpret such approach to manifest legislative purpose that the principles controlling the real property recording system in its general relation to conventional mortgages and mortgage foreclosures shall *govern the use* of the "tax-lien-mortgage-foreclosure" mechanism for the enforcement of property tax collections by municipalities and that exceptions shall be allowed only as affirmatively, plainly and explicitly declared by the Legislature.

Throughout 36 M.R.S.A. §§ 942 and 943 there is significantly lacking any clear and express statement of an exception to relieve a municipality—in the discharge of the obligation imposed upon it by 36 M.R.S.A. § 942 to identify the outstanding mortgage interest to which notice must be sent of the recording of tax lien certificates—of the responsibilities generally cast by the recording system upon those having a duty to ascertain from the record the identity of persons with interests in real property.

By such omission the Legislature has shown a lack of special concern for the types of problems which defendant town has suggested might confront "towns" (if not "cities") insofar as, in defendant's words:

". . . in this state . . . most town government is administered by hard working men and women who for the most part have families and jobs elsewhere in the town that necessarily require time spent in running town government be kept to a minimum."

We decide, therefore, that the Legislature in 36 M.R.S.A. §§ 942 and 943 has declined to create particular exceptions to the ordinary meaning of the concept of a "record owner" or "record mortgagee" for the unique benefit of municipalities generally or, particularly, for "towns" (as a form of "municipality" distinct from "cities"—"municipality" being the overall concept utilized throughout 36 M.R.S.A. §§ 941–948 to cover both "towns" and "cities.") In the entirety of the provisions of 36 M.R.S.A. §§ 942 and 943 the legislative language contains not the slightest intimation, let alone a clear declaration, of any such differentiations to disclose an intention by the Legislature to avoid the consequence, portrayed by defendant as inevitable should the tax-lien-mortgage-foreclosure methodology of tax collection be subjected to the principles generally governing the real property recording system, that

". . . tomorrow's towns . . . [will] go begging for qualified officials to manage . . . affairs because of the extraordinary burden . . . those officials [will] bear."

Were this Court to supply, in this instance, the exceptions for which defendant town argues, and which the Legislature omitted, this Court would patently exceed the judicial function and would improperly invade the domain of law-making.

Vis-a-vis the defendant town (and its tax officials) the plaintiff was a "record mortgagee" for the purposes of 36 M.R.S.A. §§ 942 and 943, as it would have been a "record mortgagee" in relation to any other person upon whom the recording system operates to provide legal notice.

We need not be concerned with whether the Registry index lies within, or outside, the *official record*.[2] The dispositive point, here, is that the documents on record (as well as the index to documents)—if reasonably, rather than cursorily, explored—contain all the information necessary to make the appropriate officials of defendant town aware that the second-mortgage-assignment to plaintiff pertained to the realty in the town against which the defendant town was filing a tax lien certificate. Ordinary diligence in search, rather than reliance upon a casual inference drawn from the simple fact that the index showed a blank in the location column, would divulge the second-mortgage-assignment document and the recording references mentioned in it and thereby lead to the second mortgage instrument and its disclosure that the situs of the real estate was in the defendant town.

■ In legal effect, therefore, under the usual "notice" principles by which the recording system operates and which we hold to be incorporated into 36 M.R.S.A. § 942, plaintiff was the "record holder of a mortgage on said real estate", and defendant town was required, under said section

---

2. In Globe Slicing Machine Co. Inc. v. Casco Bank and Trust Co., 154 Me. 59, p. 63, 142 A.2d 30, p. 32 (1958) this Court stated in a dictum: "The index or entry book is not a part of the record, . . . ."

942, to send notice to plaintiff of the recording of its tax lien certificates.

The failure of defendant to send such notice to plaintiff brought into play the special three months redemption privilege as prescribed by 36 M.R.S.A. § 943.

### 2.

The final issue is whether defendant town is correct in its alternative contention that plaintiff was too late in the exercise of the special section 943 right of redemption.

The Legislature has affirmatively, plainly and explicitly declared that the three months for exercise of the special right of redemption commences with the "receiving" of *"actual knowledge* of the recording of the tax lien certificate . . . ." (36 M.R.S.A. § 943; emphasis supplied)

The words, "actual knowledge", reveal an unmistakable departure in this particular instance from the usual legal principles of "notice." As the widely cited case of Knapp v. Bailey, 79 Me. 195, 9 A. 122 (1887) had long ago clarified, "actual knowledge" is distinctly narrower in connotation than "notice." Even when "notice" is held to be "actual", in the sense that the means are known by which *"actual knowledge"* might reasonably be acquired but are nevertheless not pursued to produce *"actual knowledge"*, the distinction between "notice" and "actual knowledge" is preserved. As the Court stressed in Knapp v. Bailey, supra:

"Notice does not mean knowledge,—actual knowledge is not required." (p. 202, 9 A. p. 123) [3]

In Rowe v. Hayden and Eaton, 149 Me. 266, 101 A.2d 190 (1953) this Court, citing many of the cases intervening between 1887 and 1953, carefully reaffirmed the distinction elucidated in Knapp v. Bailey, supra, between "notice" ("actual" or "constructive") and "actual knowledge."

Here, regardless of whether plaintiff knew of the means by which to achieve "actual knowledge" of the recording of defendant's tax lien certificates, the parties have stipulated that plaintiff was in fact without "actual knowledge." Notwithstanding that "actual notice" was present, (as the Justice of the Superior Court decided) the factor which the Legislature has chosen to make controlling, *"actual knowledge"*, was absent.

■ Hence, it was error by the Justice of the Superior Court (as it is error by the defendant in its argument to this Court) to rely upon "notice" (even though "actual") to make August 5, 1969—when plaintiff took the assignment of the first mortgage rights of Gardiner Savings Institution—the date for commencement of the three months period during which redemption opportunity was specially available to plaintiff under 36 M.R.S.A. § 943.

Correctly, the three months period began on April 6, 1970, the date when plaintiff first received *"actual knowledge"* of the recording of the tax lien certificates.

---

3. In Morey v. Milliken, 86 Me. 464, 30 A. 102 (1894) the Court had before it the language of the then insolvency law, R.S. of Maine 1888, Chapter 70 § 29, —which denied specified benefits to any "person who has accepted any preference, *knowing* that the debtor was insolvent or in contemplation of insolvency, . . . ." (p. 471, 30 A. p. 104) (emphasis supplied) The Court construed the word "knowing", as there utilized by the Legislature, to mean "actual notice."

For present purposes it is sufficient to say of Morey v. Milliken that (1) in the light of the differing public policies underlying insolvency laws and tax-lien-mortgage-foreclosure statutes, differing approaches to the judicial interpretation of words similar, but not identical, might be justified, and the interpretation relied upon in one statute would, therefore, not be controlling for the other; and (2) in any event, and more importantly, the word, "knowing", appearing in the statute construed in Morey v. Milliken, lacks the fully definitive import of the words, *"actual knowledge"*, in the statute now under consideration—the legislative resort to the word "actual" to modify "knowledge" being a critical distinction.

When plaintiff, as assignee of the second mortgage interest in the realty, made its tender on May 18, 1970,[4] the tender was within the requisite three months and was timely under 36 M.R.S.A. § 943.

Accordingly, plaintiff had effectively exercised its special three months right of redemption and had precluded defendant town from acquiring valid title to the realty in issue. Defendant was without legal right to sell it.

The entry is:

Appeal sustained.

4. May 18, 1970 was substantially more than one year after "notice of foreclosure" of the first mortgage had been given (August 7, 1968) and recorded (September 3, 1968). This fact might suggest that because the one year period of redemption had expired, a strict foreclosure of the *first mortgage* had already been achieved pursuant to the "service of notice" provisions of 14 M.R.S.A. § 6203, subd. 2 and the "failure to redeem within one year" provisions of 14 M.R.S.A. § 6204.

Were it correct that the first mortgage had thus been foreclosed with effective legal validity prior to May 18, 1970, this might have bearing upon the continuing viability of the requisite status of plaintiff on May 18, 1970 (the date of plaintiff's tender) as a *second mortgage assignee* to whom no notice of tax lien certificate had been sent by the town— as distinguished from the status of a *first mortgagee to whom the town had given such notice.*

The issue could be whether the foreclosure of the first mortgage might be regarded as having extinguished the second mortgage interests as of the time when plaintiff made its tender to the town, with effect so *absolute* as to deprive plaintiff of its requisite second mortgage assignee status *vis-a-vis the defendant town* and notwithstanding *relativistic* considerations that (1) plaintiff, as the second mortgage assignee, had acquired the first mortgage by assignment *before* the first mortgage had been legally foreclosed and (2) the status of plaintiff is here in question vis-a-vis the defendant town, which can be considered as a *third party stranger to the mortgage rights of redemption,* rather than in connection with the senior and junior mortgage rights of redemption *solely in relationship to each other.*

The parties themselves have not raised this problem.

In any event, however, upon the record presently before us we cannot, and do not, here reach the issue. The Agreed Statement provides us with inadequate information to allow any definitive conclusion concerning *when, if ever,* there was a legally valid foreclosure of the first mortgage. We have no right to assume that there was in fact any breach of the conditions of the first mortgage which *justified* foreclosure proceedings, or whether all of the statutory requirements for foreclosure were met, or whether other events had failed to supervene after the serving of the notice of foreclosure which would have prevented a legally valid foreclosure.

On the record before us we must, and do, approach the case on the basis that adequate proof is lacking that the first mortgage was legally foreclosed at any time and, therefore, nothing had happened in this respect to jeopardize the continuing vitality as of May 18, 1970, of the status of the plaintiff as assignee of the second mortgage interest.