ARTHUR F. HOPKINS *vs.* JOHN D. MCCARTHY.

Androscoggin.    Opinion December 15, 1921.

*Where an intending purchaser has actual notice of any fact, sufficient to put him on inquiry as to the existence of some right or title in conflict with that which he is about to purchase, he is bound to make the inquiry.    Notice of a lease will be notice of its contents.*

A stipulation for the renewal of a lease operates to give it effect as an original present demise for the full term for which it might be made inclusive, contingent upon an election to exercise the privilege of extension.    If the term possible be for more than seven years the lease requires record.    But notice of a lease will be notice of its contents.    Which is but another way of saying that notice may become the equivalent of knowledge, and that he who is put upon inquiry must exercise good faith, proper diligence, and reasonable care in following up the inquiry.    It is not so much a question that this plaintiff had the means of knowledge as that he did not obtain the knowledge.    He was rightly held to have had actual knowledge of the lease according to its true legal effect, and to be bound by the renewal or extension clause that it contains.

On exceptions.    This is an action of forcible entry and detainer. It was brought in the Lewiston Municipal Court and went to the Superior Court on appeal by plaintiff.    It was tried in the Superior Court without a jury and a decision favorable to the defendant resulted, from which decision plaintiff took exceptions.    Exceptions overruled.

Case is stated in the opinion.

*Frank A. Morey*, for plaintiff.

*William H. Newall*, for defendant.

SITTING:    CORNISH, C. J., SPEAR, HANSON, DUNN, MORRILL, DEASY, JJ.

DUNN, J.    Except against the lessor and his heirs and devisees, and also in opposition to any other person actually having notice, every lease of real estate for more than seven years is imperfect, without record.    R. S., Chap. 78, Sec. 14.

The owner of a Lewiston business block rented it in distinct parts to different tenants. One McCarthy occupied an upper floor; his lease being for two years, with option for its renewal for a ten-year or fractional term. There is no registry record of that lease of consequence here. A partnership, comprising this plaintiff as a member, was tenant in possession of another portion of the building. Before McCarthy's two-year period was out, and while the partnership was still continuing in tenancy, the lessor died. Thereafterwards, an administrator of the lessor's estate, especially authorized to make a sale, entered into a written agreement with the partnership, contemplating the sale and purchase of the entire block, subject only to an outstanding lease to Mr. McCarthy, the exception not being otherwise more specific than additionally to name the part of the building that his lease covered.

For some reason, not disclosed in the record, the partnership did not buy the building. Three days after that of the aforesaid agreement's date the residuary devisees under the lessor's will conveyed the block to the plaintiff. Three days later yet the administrator deeded to the plaintiff the same property. Neither deed mentions Mr. McCarthy's lease. Neither speaks of the agreement with the partnership. During the negotiations which led to the making of that agreement, the plaintiff, as the active member of the partnership in the particular business affair, saw but did not read the leasehold contract. He did read a filing on its back indicative of a two-year term. And the administrator, in exhibiting the document to the plaintiff, spoke of it as one for two years. The integrity of the administrator's belief in the accuracy of his utterance is generously conceded. He then had never known about the renewal covenant or extension clause, or, if he ever had known, that fact escaped the attention of a memory revived solely by a reading of the index on the instrument.

Beyond himself reading the filing on the lease, and being told that it was for two years, the plaintiff, in advance of purchasing the property, engaged an attorney at law to search its record title at the registry of deeds. The attorney reported the discovery of no encumbrance. Thereupon the plaintiff purchased. When the plaintiff had bought, Mr. McCarthy, who is now defending here, began to attorn to him as his landlord. Some six months later, and about three weeks before the specified two years were expiring, the defend-

ant, exercising and limiting his right of election, gave the plaintiff notice of his desire to avail himself of the renewal privilege arising from the original demise. *Perry* v. *Rockland Lime Company*, 94 Maine, 325; *Willoughby* v. *Atkinson Company*, 93 Maine, 185. Insisting the lease to be without binding force upon him for lack of record, the plaintiff thence declined to receive instalments of the reserved rental, as they successively matured. When the two years were up, he brought this action of forcible entry and detainer, seeking judgment for possession of the leased premises.

A contract for the renewal or extension of a lease is incipiently executory. Nevertheless, the stipulation for a renewal operates to give the lease effect as an original present demise for the full term for which it might be made inclusive; contingent, however, upon an election to exercise the privilege of extension. *Holley* v. *Young*, 66 Maine, 520; *Harris* v. *Howes*, 75 Maine, 436; *Willoughby* v. *Atkinson Company*, supra; *Perry* v. *Rockland Lime Company*, supra; *Briggs* v. *Chase*, 105 Maine, 317; *Hooper's Sons* v. *Sterling-Cox Company*, 118 Maine, 404; *Leominster Company* v. *Hillery*, 197 Mass., 267. So operating, if the term possible for it to embrace be for more than seven years, it brings the lease within the meaning of the statute requiring record. *Leominster Company* v. *Hillery*, supra. In the absence of limitation, the agreement to renew the lease runs with the reversion and, within the restrictions of the statute, it is binding on and enforceable against a purchaser thereof. *Perry* v. *Lime Company*, supra; *Leominster Company* v. *Hillery*, supra. Precluding limitation is not contained in McCarthy's lease. Obviously, then, decision must turn on determination of the question of whether the plaintiff, at the time of purchasing the property, had actual notice of the existence of that lease.

Actual notice and actual knowledge are not necessarily synonomous expressions. Actual notice is that which gives actual knowledge, or the means to such knowledge. It is a warning brought directly home to one whom it concerns to know. Actual notice may be either express or implied. It is express when established by direct proof. It is implied when inferable as a fact by proof of circumstances. "Express actual notice" is its own definition. Implied actual notice is that which one who is put on a trail is in duty bound to seek to know, even though the track or scent lead to knowledge of unpleasant and unwelcome facts. *Knapp* v. *Bailey*, 79 Maine, 195; *Bradley* v. *Merrill*, 88 Maine, 319.

In the present case events came about in close propinquity. Plaintiff's partnership and the defendant, as we already have seen, were tenants of different parts of the same building. In behalf of his partnership, plaintiff arranged for the purchase of the building. He then actually saw the defendant's leasehold document. Seemingly in substitution for the partnership, but whether so or not, with the same mental faculties and the same notice that were his while acting for the partnership, he within the week following took to himself individually two deeds to the property, both silent on the subject of an existing tenancy. Although his earlier information had told him that McCarthy's lease was yet unexpired by limitation of the two-year term, and although McCarthy, as the plaintiff in his daily walk must well have known, was still in occupancy of the upper floor, yet the plaintiff explored only the avenue of the registry of deeds. Other ways potential of intelligence he did not deign to enter upon. Certain facts it was given him to know. And knowing them his knowledge ought to have impressed him. For, to one who knows a fact and thereby is impressed, a fact is more than a fact; it is a living, sentient thing; a source of thought.

Inquiry was not necessary because the plaintiff saw the defendant in possession. Possession alone is not implied notice. *Hanly* v. *Morse*, 32 Maine, 287. But inquiry became highly important when he had found out that the man was in possession under a contract of lease. Then a prudent man would have inquired, and inquiring would have learned. Then, to excerpt from *Birdsall* v. *Russell*, 29 N. Y., 220, there was "such a connection between the fact discovered and the further facts to be discovered as to furnish a clue—a reasonable and natural clue—to the latter." Notice of a lease will be notice of its contents. Story's Eq. Jur., Section 400. Which is but another way of saying that notice may become the equivalent of knowledge, and that he who is put upon inquiry must exercise good faith, proper diligence, and reasonable care in following up the inquiry. The underlying and ruling principle is that of common prudence, or, better still, that of common honesty. "Whatever puts a party upon inquiry, amounts in judgment of law to notice, provided the inquiry becomes a duty and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding," is a commendable syllabus condensed into small space. *Lodge* v. *Simonton*, 2 Penrose & Watts, 439; 23 Am. Dec. 36. Mr. Justice Story

says: "Whenever inquiry is a duty, the party bound to make it is affected with knowledge of all that which he would have discovered had he performed the duty." *Cordova* v. *Hood,* 17 Wall., 1; 21 Law Ed., 587. Ruling Case Law puts the essential principle in words of undoubted denotation, words that are precise, specific, concrete, and strong: "Where a person is charged with notice, or actually knows, of an instrument he is also charged with notice of all facts appearing on the face of the instrument to the knowledge of which anything there appearing would conduct him." 20 R. C. L., 353. Duty unperformed begets consequences to be suffered. Where an intending purchaser has actual notice of any fact, sufficient to put him on inquiry as to the existence of some right or title in conflict with that which he is about to purchase, he is bound to make the inquiry. The corollary is that the purchaser may show by proof, where his actual notice of the preliminary fact has been established by legitimate evidence, that he failed to discover the prior right, the exercise of appropriate diligence on his part notwithstanding.

It is not so much a question that this plaintiff had the means of knowledge as that he did not obtain the knowledge. The idea of reading the lease, or of having it read aloud in his hearing, does not seem to have occurred to him. He dared know that which he would know,—what the filing on the back of the lease pointed out,—and beyond this he was indifferent and was blind. Surely, had the lease been of registry record, the plaintiff would not base his case upon a statement that in his reading of the record he totally ignored the covenants there spread before him. His present position is not worthy more esteem. His indifference was blameworthy and his blindness wilful. That indifference and blindness fused into negligence of a degree fatal to his claim of having purchased in innocence of knowledge, for value. He had actual notice of the lease according to its true legal effect, within the meaning of the statute.

*Exceptions overruled.*