**Raymond F. GAGNER and Beatrice C. Gagner**

v.

**KITTERY WATER DISTRICT et al.**

Supreme Judicial Court of Maine.

May 3, 1978.

Waterhouse, Carroll & Cyr by Robert N. Cyr (orally), Biddeford, for plaintiffs.

Patrick L. J. Veilleux, Kittery (orally), Gaulin & Kimmel by Edward F. Gaulin, Biddeford, for defendants.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

The Kittery Water District (District), a defendant in the action below, appeals from the York County Superior Court's ruling that it has no valid easement as against the plaintiffs for maintenance of a water main claimed by the District. We sustain the appeal.

In 1969 Warren's Realty, Inc. (Realty) conveyed to the plaintiffs, Raymond and Beatrice Gagner, by warranty deed, certain realty abutting Route 1 in Kittery, Maine. The Gagners commenced the present action against their seller in 1971 for breach of covenant of warranty against encumbrances, having discovered shortly after

taking the deed that a water main, owned by the District and serving the Portsmouth Naval Shipyard, traversed the property. Realty then brought a third-party complaint against the plaintiffs' attorney, who, in addition to having represented both the Gagners and Realty in the land transfer, had also searched the title for the plaintiffs and certified it to be free and, clear of all encumbrances.[1] The plaintiffs later amended their complaint to join the District as an additional party defendant. With the case thus postured, the Superior Court issued a pre-trial order severing for hearing the issue of the validity of the District's easement. After a hearing limited to that issue, the Superior Court ruled that "there is no valid easement as against plaintiffs in this case for the maintenance of the water main claimed by the Kittery Water District." The District appealed the final judgment entered against it below.[2]

■ The validity of the District's unrecorded water pipe easement as against the Gagners depends upon our applying to the facts of this case the governing Maine recording statute, 33 M.R.S.A. § 201 (1964), providing in pertinent part that

"*[n]o conveyance* of an estate in fee simple, fee tail or for life, or lease for more than 2 years or for an indefinite term *is effectual against any person except* the grantor, his heirs and devisees, and *persons having actual notice thereof unless* the deed or lease is acknowledged and *recorded* in the registry of deeds within the county where the land lies . . ." (Emphasis added).

This court has in the past had occasion to define the term "actual notice" as used in the recording act.

"Actual notice and actual knowledge are not necessarily synonymous expressions. Actual notice is that which gives actual knowledge, or the means to such knowledge. It is a warning brought directly home to one whom it concerns to know. Actual notice may be either express or implied. It is express when established by direct proof. It is implied when inferable as a fact by proof of circumstances. 'Express actual notice' is, perhaps, its own best definition. Implied actual notice is that which one who is put on a trail is in duty bound to seek to know, even though the track or scent lead to knowledge of unpleasant and unwelcome facts." *Hopkins v. McCarthy*, 121 Me. 27, 29, 115 A. 513, 515 (1921).

Elaborating more particularly on the concept of "implied actual notice," we earlier said in *Knapp v. Bailey*, 79 Me. 195, 204, 9 A. 122, 124 (1887), that:

"The doctrine of actual notice implied by circumstances (actual notice in the second degree) necessarily involves the rule that a purchaser before buying, should clear up the doubts which apparently hang upon the title, by making due inquiry and investigation. If a party has knowledge of such facts as would lead a fair and prudent man, using ordinary caution, to make further inquiries, and he avoids the inquiry, he is chargeable with notice of the facts which by ordinary diligence he would have ascertained. He has no right to shut his eyes against the

1. At the time of the attorney's title search in 1969, the District owned an unrecorded water pipe easement over the property that the Gagners purchased. The easement was not recorded until December 13, 1973. All parties agree that the District's act of recordation has no bearing upon the outcome of the present litigation.

2. In response to the District's "Motion for Determination of Appeal" the Superior Court justice entered a handwritten order at the bottom of the motion, reading:

"Partial judgment rendered in this case adverse to Kittery Water District is under the

pleadings a final judgment as to said Defendant from which said Defendant Water District may appeal as being in one aspect dispositive of the case as to said Defendant Water District and may be allowed."

Although the court did not expressly refer to Rule 54(b), M.R.Civ.P., and its order was not technically in compliance with that rule, we treat that order as the functional equivalent of a Rule 54(b) certificate in view of the court's obvious intent to accomplish that result. To avoid future difficulties of interpretation, however, it is preferable that the Superior Court follow closely the dictates of Rule 54(b).

light before him. He does a wrong not to heed the 'signs and signals' seen by him. It may be well concluded that he is avoiding notice of that which he in reality believes or knows. Actual notice of facts which, to the mind of a prudent man, indicate notice is proof of notice."

The Superior Court found in the present case that the plaintiffs had no notice, actual or implied, of the existence of the Kittery Water District's water line crossing their property. To the contrary, we conclude that in the circumstances of this case the plaintiffs, through their attorney and title searcher, were put on inquiry notice of the District's easement, but the inquiries made by them did not, as a matter of law, constitute the due diligence required to prevent the enforcement of the District's unrecorded easement against them.[3]

While examining the chain of title to the property at the York County Registry of Deeds in 1969, the Gagners' attorney noticed language in several earlier deeds, first appearing in 1922, stating that the conveyance was made "subject to the rights of the Kittery Water District to maintain a line of water pipes across said premises, as set forth in [a release from Joseph H. Blaisdell] to said Water District." The attorney searched the Registry records for the above-mentioned release, but, as it was then yet unrecorded, he found no such instrument. From the face of the deeds, the attorney also learned that the property which the Gagners desired to purchase had once formed part of a single larger parcel. In 1943 Warren Wurm and his wife had purchased that parcel "subject to" the rights of the District. In 1953 and 1958, the Wurms by two separate conveyances transferred title to the entire parcel to Realty, the Wurms' corporation. Only that part of the land conveyed by the 1953 deed was, however, conveyed "subject to" the rights of the District. Realty later conveyed that first parcel to a third party by a deed containing no reference to any rights of the Kittery Water District. The parcel that the Gagners purchased was identical to that which the Wurms had conveyed to Realty in 1958 without any "subject to" language.

At the hearing the Gagners' attorney acknowledged that what he actually saw in the deeds[4] put him on inquiry as to the existence of the District's water line. Thus alerted, he contacted Warren Wurm representing Realty, the seller, and asked him whether the District owned any rights in the property. Wurm assured him in the negative. As the attorney testified:

"Mr. Wurm was very anxious to close, have a closing as soon as possible, and I had to go back a second time to the Registry of Deeds because of my concern about this easement. To my best recollection, Mr. Wurm came into my office, I believe it was in my office, he came in a couple of times regarding the closing and selling this parcel to Mr. Gagner, and I asked him about the water, the water easement, which was mentioned, and he assured me that it did not concern the Gagner parcel."

In addition, Mr. Gagner personally inspected the property prior to the purchase and was told by Warren Wurm that a water hydrant located immediately adjacent to the highway supplied water to the property. Mr. Gagner's inspection of the premises revealed no evidence of any other water main

3. In view of our conclusion that the facts in this case add up to actual notice, we need not in addition inquire whether "constructive," or record, notice also existed.

4. 33 M.R.S.A. § 201–A, enacted by P.L.1977, ch. 504 (eff. July 15, 1977), now provides that "an exception, reservation or recital" in a deed of a property interest "shall not constitute actual notice within the meaning of section 201" of that interest unless it also contains *either* a specific reference to the volume and page of the registry or probate court record evidencing the conveyance, etc., *or* "[a]n adequate description by metes and bounds or by reference to the volume and page of the record of a survey plan of the property affected by the exception, reservation or recital, in which case the actual notice shall extend only to the property so described." The Gagners' purchase from Realty, and therefore their "actual notice" of the Kittery Water District easement, occurred in 1969, long prior to the effective date of section 201–A.

crossing the property.[5] According to the attorney's testimony,

"At the time, not finding any recorded easement, and being assured by Mr. Wurm that it did not affect the premises, coupled with the fact that the deed, the prior deed of the premises being conveyed, made no mention of the right of way, it seemed to me I had done as much as was necessary . . . ."

The foregoing summary represents the sum total of the steps taken by the plaintiffs, through their attorney, to determine whether the District in fact owned any interest in the property they were purchasing. At no time was any attempt made to contact the District to inquire of *it* whether any such interest existed. In view of all the facts the plaintiffs are charged with knowing, the failure to do so constituted a fatal omission in executing their duty of reasonable inquiry.

 The plaintiffs' attorney knew from the record that Joseph H. Blaisdell had once given a release to the District to maintain a line of water pipes at some location across the larger tract of which the Gagners were buying a portion. He admitted that the clause in the deeds put him on notice of a possible claim of the District in the property. What inquiry of the seller will satisfy the purchaser's duty of due diligence is in every case a question of fact. When the facts known to the purchaser cast doubt upon the very existence of the seller's title, he is bound to inquire of him whether he has any real title or not. *Knapp v. Bailey, supra* at 204–05, 9 A. at 124–25. The plaintiffs, by their attorney, recognized a duty to inquire of the seller, but upon receiving a false answer did nothing to check with the Kittery Water District, the named holder of the unrecorded interest. *Knapp v. Bailey, supra,* cannot be read to hold that inquiry of the seller will in all instances satisfy a purchaser's duty to inquire. Clearly, more could easily have been done here, and equally clearly, the true facts would have then been revealed. *Kendall v. J. I. Porter Lumber Co.,* 69 Ark. 442, 64 S.W. 220 (1901); *Ostrom v. Ferris,* 99 N.J.Eq. 551, 134 A. 305 (1926), *aff'd mem.,* 103 N.J.Eq. 22, 141 A. 920 (1928); *Ohio River Junction R. R. Co. v. Pennsylvania Co.,* 222 Pa. 573, 72 A. 271 (1909); *Pender v. Dowse,* 1 Utah 2d 283, 265 P.2d 644 (1954).

The District, named as grantee of the interest, had its office in the same town where the subject property was located, and, as an active public utility, could be expected to maintain at a readily available office comprehensive maps and records relating to the easements for its mains. Under these circumstances, the purchasers were bound to inquire of the District, as the most reliable source of information, whether it still claimed the rights referred to in the deeds. Under all the circumstances, the failure to seek an explanation beyond that given by Warren Wurm, who, as the principal of the corporate seller, had an obvious interest in nondisclosure, can only be viewed as a failure of due inquiry. The Gagners are "chargeable with notice of the facts which by ordinary diligence [they] would have ascertained." *Knapp v. Bailey, supra,* 79 Me. at 204, 9 A. at 124.

The entry must be:

Appeal sustained.

Judgment reversed.

---

5. Shortly before the conveyance to the Gagners took place, the State had acquired title to a seven-foot strip along Route 1 which encompassed the land upon which lay the water hydrant. When he learned of that conveyance, the attorney testified that he formed the opinion that "even if that were the easement, it would no longer be an encumbrance on the premises."