STATE OF MAINE
PENOBSCOT, SS.

FILED AND ENTERED
SUPERIOR COURT

MAY 3 0 2001

PENOBSCOT COUNTY

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-99-112

FCM -Pen-5/30/2001

SHIRLEY & JAMES MACDOUGALL
    Plaintiffs

V.                **FINDINGS OF FACT AND ORDER**

JOHN & JOAN REINZO
    Defendants


This matter is before the Court on the complaint of the plaintiffs and on the counterclaim of the defendants. At the commencement of the hearing the plaintiffs withdrew their claim for trespass (count two) and press their claims for relief in the nature of an injunction based upon either a deeded right-of-way or a right-of-way to which they had acquired rights by prescription.

The counterclaim of the defendants alleged that a septic tank and pump is improperly situate on their property and that such rights ought to terminate since the system was there by permission. Thereafter the plaintiffs amended their complaint and in count one sought permission to continue to use the septic system which they admit is partially on the property of the defendant. The plaintiffs also allege that a fence was placed on the property of the plaintiffs and that fence constituted a trespass. Finally, in count three, plaintiffs claim that they have rights either by deed or by prescription and seek the same injunctive relief noted above.

In the amended answer and counterclaim, count one of the

counterclaim repeats the argument of a trespass based upon the plaintiff's use of a septic tank that is located on the Reinzos' property. Count two alleges the defendants have a right over the driveway of the MacDougalls. Finally, Defendants allege misrepresentation saying that the defendants talked to plaintiff, Shirley MacDougall, prior to their purchase and bought their property and made improvements thereon solely as a result of statements which they say the plaintiff, Shirley MacDougall, made. The Reinzos claim a misrepresentation since plaintiff said that her use was not adverse but was by permission.

The case was tried over the course of two days after a preliminary order by this court dictated that the defendants would have the burden of disproving the case which was established by the plaintiffs in their Motion for Summary Judgement. The order of the court provided the means of presentation of the evidence. However, Mr. Cuddy on behalf of the plaintiffs, recognizing that this court had found a prima facie case only for a claim by deed elected to proceed as well on his claim for a prescriptive easement and he presented the plaintiffs' case for a prescriptive easement.

As a matter of factual background it is clear that the plaintiffs are owners of contiguous property on the westerly shore of Cold Stream Pond in the town of Enfield. Significant parts of the chains of title of the two parties is in evidence. The evidence admitted established that the parties have a common grantor, Lucy G. Cliff. She was married to Lawrence C. Cliff and he often joined her deeds as co-grantor, but it was she who owned a parcel of land on the westerly shore of Cold Stream Pond which apparently ran westerly to the public highway known as Route 151.

Lucy Cliff conveyed to Philip M. and Janet A. Dean by warranty deed dated June 30, 1952. That deed is in evidence and was recorded in volume 1354, page 355 of the Penobscot Registry. After various conveyances, Shirley May MacDougall, the plaintiff in this case, acquired title to those premises by deed of Boyd M. Hinckley et ux. That deed is in evidence as defendant's exhibit #9. Although the original grant to the Deans began at point 35 feet northerly of the northeast corner of a lot of land formerly of one Marjorie Buck, by the time of the deed to Shirley May MacDougall the point of beginning had changed to the northeasterly corner of Carl W. Ryder. This Court finds as a fact that the change in the description of the "critical" monument is of no import: the point of beginning is the same. The critical monument in a deed sometimes known as the "point of beginning" should be found if at all possible. ". . . . the point of beginning . . . was a critical monument, and the court was obliged to determine, if possible, the location of that monument on the face of the earth. See Ricci v Godin, 523 A.2d 589, 592 (Me. 1987) and Proctor v. Hinckley, 462 A,.2d 465, 470-471 (Me. 1981).

The land of Carl W. Ryder became land of the defendants and arose from an original conveyance out by Lucy Cliff dated June 30, 1952 and recorded in the Penobscot Registry of Deeds in book 1354, page 409. It is in evidence as defendant's exhibit #2. The deed was to Carl W. Ryder and Irene M. Ryder as tenants in common. Thereafter Carl W. Ryder, who it is apparent became Carl W. Ryder, Sr. as a result of the birth of his son Carl (Carlisle) W. Ryder, Jr., conveyed the property along with Ernest Ryder, another son, to their mother and the widow of Carl W. Ryder, Sr. by deed recorded in the Penobscot County Registry of Deeds on July 12, 1995. See

4

Defendants' Exhibit #12. Shortly thereafter, Irene passed away, and Carlisle W. Ryder acting as her duly appointed personal representative conveyed the premises to John E. Reinzo and Joan Reinzo as joint tenants. That deed appears of record in book 6843, page 275 of the Penobscot Registry and is in evidence as defendant's exhibit #14.

The dispute between the parties arises as a result of a driveway that has been used by the plaintiff, Shirley MacDougall, from the time of her acquisition of the property until such time as the Reinzo's acquired the property and barred access to the plaintiff's property by a gate and a fence. This suit was brought primarily as a result of that fence and gate construction but also because of the septic system.

The problem between the parties arises as a result of what this Court will call the Horseshoe. By agreement, a tax map was introduced which shows the Reinzo property on the south (#15), the MacDougall property next northerly (lot #14), the Leonard property next northerly (lot #13), and the Wallace property next northerly (#12).[1] Leonard also acquired property westerly of what is called the Page Road. The south portion of the Horseshoe Road is shown on the survey done by Richard Day which is in evidence as Plaintiffs" exhibit #2. The portion of the Horseshoe which is on the Defendants' and MacDougall property is shown thereon.

At an earlier time, and without objection, the northerly owners ceased and discontinued use of the road over their property. It is agreed

---

1. Both Leonard and Wallace were originally third parties to this action, but as a result of factual matters that will be related hereafter, they were dismissed as parties prior to trial.

they have exercised such rights as would prevent both the MacDougalls and the Reinzos from using those rights of way by virtue of deed or adverse possession of the right-of-way which was formerly the Horseshoe and they have no rights over the portion of the Horseshoe on land of the parties to this lawsuit.

The language in the Dean deed which is the genesis of the problem reads as follows:

> "also a right-of-way by foot, vehicle or otherwise, in common with the grantor and others who may have the same right, over and across the land of the within grantors to the public highway situate westerly of the within conveyed lot for the purposes of ingress and egress to and from said lot and to and from said public highway. Said right-of-way shall be over and across the right-of-way as now laid out and in use. Excepting and reserving, however, a right-of-way in common with the grantor and others who may have the right to use the same over and across the westerly part of the within conveyed lot or parcel of land. Said right-of- way is now laid out and in use."

The issue to be resolved involves a latent ambiguity which "occurs when, in applying the description to the ground, the facts extrinsic to the document controvert or in some way render unclear the deed's apparently unambiguous terms." Snyder v. Haagen, 679 A.2d 510, 513 (Me. 1996). If a ". . . deed contains latent ambiguities .    . . . the court must therefore determine the grantors' intent from contemporaneous circumstances and from standard rules of construction." Perkins v. Graves, 642 A.2d 1349, 1351 (Me. 1994). See also Milligan v. Milligan, 624 A.2d, 477 (Me. 1992). See Lawton v. Richmond 690 A.2d 953, 954 (Me.1997).

Each of the parties presented an expert and although Richard Day was engaged by Mr. Cuddy as a surveyor, he was called by Mr. Zmistowski and examined. Mr. Day took the position that the word "and" was a conjunction and coupled two right-of-ways together. One of the parts came from the public highway and one (the Horseshoe) was better described in the exception which followed the grant.

His position was buttressed by the fact that there are two sentences

referencing rights-of-way. The first reads, "Said right-of-way shall be over and across the right-of-way as now laid out and in use." The second says: "Said right-of-way is now laid out and in use." The sentences are not surplusage and are not redundant but are relevant to the latent ambiguity.

Mr. Day's testimony was followed by Knud Hermansen who testified as the Reinzo's expert. It was Mr. Hermansen's opinion that the language described only one right-of-way.

Each of the deeds to the parties to the lawsuit specifically changed the language used in describing the right-of-way and in the Reinzo deed it reads as follows, "also a right-of-way by foot, vehicle or otherwise over and across the land now or formerly of Lucy G. Cliff's situate westerly of the above conveyed lot or parcel of land from the above described lot for the purpose of ingress and egress to and from said lot and to and from said public highway. This said right-of-way shall be over and across the right-of-way as now laid out and used and shall be in common with Lucy G. Cliff and others who may have the right to use the same."

The 1971 deed to the plaintiff, Shirley May MacDougall, is brief. It reads "also, Meaning and Intending to convey a right-of-way for purposes of ingress and egress over an existing way at the westerly terminus of the parcel herein conveyed."

This court has reviewed the language and heard the testimony and is of the view that there is one road with two parts. The first of these roads is the Page Road so called which is laid out and is not in question. The balance of the road is the loop (the Horseshoe so called) which ran over lot #15 in an easterly direction from the easterly edge of the Page Road to a point where it swung northerly through lot 14, 13 and then through 12 in a westerly direction to re-intersect the more northerly portion of the Page Road.[2]

It is clear that there is language, especially the phrase "westerly terminus", which supports the Defendants' argument that the deeds only refer to the Page Road. It is equally clear that there is some significant language which suggests that there were two right-of-ways. The Page Road was clearly the first but the second was an interior one. That is, it is easterly of the westerly bound of each of the lots numbered 12, 13, 14, and 15 on the tax map.

---

2 . The lots are as shown on the Tax Map

This court is satisfied that the plaintiffs have a right-of-way over the Reinzo lot, that the Reinzos have a right-of-way over the MacDougall lot. The question of whether there are or were rights of way over lots 12 and 13 (Tax Map) has been abandoned by the parties remaining so that such a matter is no longer an issue.

The latter descriptions of the MacDougall right-of-way and the Reinzo right-of-way create problems in that they are, if it is possible, even more confusing than the original grants. For instance, there is some question as to whether not the deed from Carlisle Ryder, Jr. to John E. Reinzo et ux as recorded in book 6843, page 275 conveys the horseshoe. There is even greater question about the deed from Boyd Hinckley et ux to Shirley May MacDougall because the phrase "at the westerly extremity of the parcel herein conveyed" suggests that only the right-of-way styled as the Page Road (as shown on the tax map) was intended to be conveyed.

Even if the court's conclusion as a factual matter was wrong, that is that there is one road with two parts which runs easterly from Route 151 along the Page Road to the westerly end of the horseshoe thence easterly, northeasterly, northerly, northwesterly, and westerly across lots 15, 14, 13, and 12 to the easterly bound of the Page Road, there is sufficient evidence so that the use of the right-of-ways is established by prescription as well. Mrs. MacDougall certainly relied upon her understanding of the nature of her estate and its components to support her claim that her use was, as matter of right, adverse to any of the parties none of whom tried to prevent her use in any event. Thus, on the part of all the persons up until such time as Mrs. MacDougall abandoned her interest in those portions of the right-of-way northerly of her northerly bound such that they were foreclosed by adverse possession, a right of way existed in all four of the involved parties.

Thereafter all of the parties ceased to have a right over any portions of the Horseshoe except for the Reinzos (and the right of their predecessors) over the MacDougall land and the MacDougalls over the land now of Reinzo.

Some suggestion has been made that Mrs. MacDougall has abandoned her claim by virtue of reconstruction of her house some time in the 1970's. The argument appears to be that the change of the location of the dominant tenement constituted an abandonment of any right of way by prescription thereto. That argument is without merit. The very nature of the incorporeal hereditament is that is has never been formally located on

the face of the earth and, while the scope of use of an easement is governed by the use made during the period of prescription, the use here was similar. That is, the residential nature of the dominant estate did not change sufficiently so as to require a new period of adverse use. "A right of way gained by prescriptive use is not unlimited. It has certain parameters which are, in general, controlled by the burden placed on the servient estate during the prescriptive period." Benner v. Sherman, 371 A.2d 420, 422 (Me. 1977). This Court finds, as a matter of fact, that the burden was the same.

Moreover, each of the parties has a right to locate such a right-of-way to their own satisfaction in a fashion which is consistent with the use of their own land and such a use is valid unless objected to by any of the other parties in which case the scope of use and location are issues to be resolved. No party having the right to the Horseshoe objected thereto; consequently the location shown on the plan is sufficient.

The Reinzos also make an argument based upon the provisions of 33 M.R.S.A., §201-A and §201-B. The facts are clear that no express description of the right-of-way was recorded after the effective date of those statutes in the late 1970s. 33 M.R.S.A. §201 has language today which is similar to that which was in effect in the early part of the twentieth century and the relevant phrase is "and persons having actual notice thereof. . . ." That was the language of the statute at the time of Sanford v. Stillwell 101 Me 466 (Me. 1906) was decided.

The sole purpose of the enactment of 33 M.R.S.A. §201-A and §201-B was to obviate title problems created by exceptions or reservations which made reference to instruments without a specific description of the estate excepted or reserved. The use of the phrase "actual notice" within the meaning of 33 M.R.S.A. §201-A was introduced for the purposes of affecting actual notice. Nothing in the law suggested that if there were a set of facts on the real estate which conveyed actual notice that it was not sufficient for the purposes of alerting a prospective purchaser as to the problems with the estate.

That was the case here. Whether or not a person consults a lawyer and receives advice respecting the existence of an estate is irrelevant. See Hopkins v. McCarthy (1921) Me., 121 Me. 27, 115 A. 513. As this court pointed out to counsel it was involved in the drafting of that statute and that statute was drafted to cure a title problem that was created by Sanford v. Stillwell, supra. As called to Mr. Hermansen's attention the

express language of §201-A relates to a general exception not constituting "actual notice within the meaning of §201".

In dealing with actual notice the Maine Law Court in <u>Hopkins v. McCarthy</u> (Me 1921) 121 Me. 27, 31 says "where an intending purchaser has actual notice of any fact, sufficient to put him on inquiry as to the existence of some right or title in conflict with that which he is about to purchase, he is bound to make the inquiry. The corollary is that the purchaser may show by proof, where his actual notice of the preliminary fact has been established by legitimate evidence, that he failed to discover the prior right, the exercise of appropriate diligence on his part notwithstanding." <u>Gagner v. Kittery Water District</u>, 385 A.2d 206, 207-209 (Me. 1978) holds that when buyers are put on inquiry notice at the time of purchase, they are deemed to have implied actual notice of that which by ordinary diligence they would have ascertained. They are chargeable with notice of an easement.

In his testimony Mr. Reinzo suggests that he took all the necessary steps because he spoke with his attorney about the possible existence of Mrs. MacDougall's claimed right-of-way. That is not dissimilar to <u>Hopkins</u> wherein the court noted "the attorney reported the discovery of no encumbrance. Thereupon the plaintiff purchased". The court in <u>Hopkins</u> went on to hold "he had actual notice of the lease according to its true legal effect, within the meaning of the statute." That case stands for the proposition that in this instance Mr. Reinzo relied upon his attorney's advice to his detriment. He had actual notice of a right-of-way which he says was identified as a permissive use by Mrs. MacDougall but one as to which she said she had a legal estate by deed.

In either case it was sufficient in this court's view to expose him to the result which this court finds as a fact: he had actual notice of a claim of an easement. That is, Mr. Reinzo obtains no relief from the provisions of 33 M.R.S.A. §201A and B because he had actual notice within the meaning of §201 notwithstanding the failures to meet the express requirements of §201-A(1)(2) and that there was no express description meeting the requirements of §201-B. See <u>Sanford</u>, supra,.

It is to be noted that in his argument Mr. Cuddy did not suggest that the Reinzos did not have a right to use the right-of-way on the MacDougall estate. Specifically, the Reinzos have the right to drive upon that portion of the estate over which the right-of-way runs for the purpose of backing from the MacDougall property onto their own so as to more easily turn on

the narrow lot of which they are the owner. Thus, there being no objection and the facts and the law warranting it the relief requested by the Defendants' counterclaim in count two is granted.

Count three of the Defendants' counterclaim seeks damages on the basis of misrepresentation. The defendants claim that Mrs. MacDougall misrepresented the extent of her estate. They suggest that certain conversations which she had with them suggested that she agreed that the use was permissive. The exact nature of permissive use generates significant controversies in estates in which an easement by prescription is claimed.

There is in this court's view a significant difference between the right-of-ways and the septic system usage. The facts relating to the septic system show that Mrs. MacDougall's husband and a prior owner of the defendants' estate introduced a joint system for the purposes of waste disposal a portion of which is clearly on the land of the Reinzos. They seek, and are entitled, to have Mrs. MacDougall remove her septic system to the extent that it is on the Reinzo land and to relocate it on her own premises. Everything about the creation of the septic system by joint venture suggests a permissive estate.

The only right that could be claimed would be based on an argument of a transfer for consideration. That is that there was a mutual interest in each of the parties in creating a septic system to serve their respective premises. Those specific rights were granted. As of the time that the Reinzos predecessors stopped using the jointly built system, the rights utilized by Mrs. MacDougall continued to be permissive and were not hostile. There was nothing different in the quantum of use. The evidence suggests and the court finds that the permissive nature of the use of the septic system continued until the Reinzos acquired the property at which time they terminated that permission and a need to remove the septic system exists.

The use of the right-of-way is unquestioned. All of its use meets the requirements of the law of Maine relating to prescription, especially that set out by Mr. Zmistowski. He relies upon Glidden v. Beldon 684 A.2d. 1306, 1317 (Me 1966) cited approvingly in the case advanced by Mr. Cuddy which is S.D. Warren, Co. v. Vernon, 697 A.2d. 1280 (Me 1997).

The test is "the party asserting a prescriptive easement must prove continuous use, for at least 20 years under a claim of right adverse to the owner, with his knowledge and acquiescence, or by a use so open,

notorious, visible and uninterrupted that knowledge and acquiescence will be presumed." Even assuming that this court is incorrect in its holding that there was a right-of-way conveyed by a deed, it is clear that the use meets the test of a prescriptive easement because there was claim of use for more than 20 years that was adverse.

The Court finds that Mrs. MacDougall made that use under a claim of right which was adverse to the owner of the servient tenement. The way was used throughout the entire period with the knowledge and acquiescence of the owner of the servient tenement, but it was also open, notorious, and uninterrupted so that knowledge and acquiescence could be presumed. This court is satisfied that Mrs. MacDougall proved all of the necessary elements to establish a prescriptive easement even if she did not have a deeded easement. The only question is whether or not it was adverse within the meaning of the law or whether it was by mistake and, therefore, not adverse. In that regard, see Emerson v. Maine Rural Mission, 560 A.2d 1 (Me. 1989).

Although Emerson, id, related to parcel adverse possession, its holding respecting adverseness is relevant. "It is not unusual for an adverse possession to begin under a mistake as to title. *McMullen II, 483 A.2d at 700.*[3] However, occupation by mistake is not determinative as to whether an adverse claim is sustainable absent evidence that the occupier intended to hold the property only if he were in fact legally entitled to it. Such an occupation would be conditional and could not form the basis of an adverse possession claim. *Id.* (citing *Landry v. Giguere,* 127 Me. 264, 268, 143 A 1, 2-3 (1928)[4]. If, on the other hand, a party claiming through mistake has an absolute intent to claim the land, his possession is adverse to the true owner." This Court finds as a fact that Ms. MacDougall had an absolute intent to claim the right to use the way. Thus even if her deed were to fail which it should not, she held the requisite mental intent to allow a prescriptive easement.

---

3. See the questioning of the attorney of the key witness on page 701 which led to reversal and rehearing.

4. The holding in Landry, has been abrogated by 14 M.R.S.A. §810-A which deleted the requirement of knowledge and subjective intent formerly required by Preble v. Maine Central Railroad Co., 85 Me 264 which did not apply to right of ways in any event.

Moreover, as the Court ruled in <u>Town of Manchester v. the Augusta Country Club</u> 477 A.2d. 1124 (Me. 1984) relying upon <u>Rollins v. Blackden</u>, 112 Me. 459, 465 92 A. 521, 525 (1914) acquiescence implies passive assent or submission to the use, as distinguished from the granting of a license or permission given with the intention that the licensee's use may continue only as long as the owner continues to consent to it. "It has been said that acquiescence is consent by silence." See <u>Dartnell</u> 115 Me. 230, 98 A. at 745. That language shows the distinction between the septic system and its paraphernalia as opposed to the right-of-way.

This court finds as a fact that with respect to the septic system there was a permission with the intention that the use by Mrs. MacDougall would last only so long as it was mutually convenient for the two estates. The circumstances as presented through her testimony suggest and the court finds that there was no acquiescence so as to allow a prescriptive easement to arise. Consequently, the defendants had the right to terminate the septic use.

As has been noted, the contrary is the case with the right-of-way. In the first instance the court has already found that the language of the grant was sufficient to convey the right-of-way. Further to that point, is the finding by the court that even if the interruption of the northerly part of the Horseshoe where it went through lots 13 and 12 to re-intersect the Page Road there was a sufficient estate conveyed as an appurtenant grant. That is the language of the conveyance granted to Mrs. MacDougall the right to use the Horseshoe through its entire scope. Even if the express language of her deed were insufficient to convey that estate, the balance of the portion of the road which has been identified as the Horseshoe would pass under the appurtenance language in her warranty deed. The express conveyance in the deed to her recorded in book 2234, page 797, reads: "ALSO, Meaning And Intending to convey a right-of-way for the purposes of ingress and egress over an existing way at the westerly extremity of the parcel herein conveyed." Even if construed to relate only to the Page Road (and this Court believes it should not be) it would not preclude the conveyance under the balance of the language which reads "to have and to hold the aforegranted and bargained premises with all the privileges and appurtenances thereof. . . ." That language would carry the Horseshoe portion of the road in this court's view as well.

As a result of the foregoing the following is the order of the court. With respect to Count One of the amended complaint:

1) with respect to the septic system and the maintenance of the septic tank and pump, judgment is for the defendants and the plaintiffs are ordered, within a reasonable time not to exceed four months, to remove said system from the premises of the defendants.

2) With respect to the request of the plaintiff for an injunction to order the defendant to remove the fence interfering with access over the Horseshoe road the judgement is for the plaintiffs and the defendants are ordered to remove the fence and to reform the area between the existing driveway of the defendants and the area to be used, which has been used in times past, by the defendant as and for a driveway to their property. The court will not order the removal of the pavement at or near the fence at this time, but will order it if the parties are unable to agree as a result of this court's order. The defendants are ordered to allow access to their property in a fashion satisfactory to the plaintiffs and the defendants. The foregoing does not preclude the defendants from gating the entrance in a fashion satisfactory to the parties jointly. In the event that the parties are unable to agree upon a provision respecting gating, or the location of the gate, they may return to this court for further orders in connection with the same.

3) Because no issue has been raised by either of the parties respecting surface waters, the court makes no findings with respect to it notwithstanding the provisions of its earlier order.

4) Because the plaintiffs have withdrawn their claims for trespass, judgment on the claim for trespass is for the defendants.

With respect to the counterclaim count one which is the claim for improper use of the septic tank that matter has been addressed and it is found that the plaintiffs are to be provided a reasonable time within which to remove the tank in accordance with the order correlating to the same in count one.

With respect to count two of the counterclaim the Court finds for the defendants. The defendants have a right to use so much of the Horseshoe road as runs over the plaintiffs' land for the purposes of ingress and egress. The scope of the easement with respect to both the defendants' estate and the plaintiffs' estate is either to be agreed upon or the parties may return to this court for further findings, but it is the intent of this court that the defendants would have the right to drive into and back out of the plaintiffs' estate. The defendants would have no right to park their vehicles upon this right-of-way, nor would they have a right

to turn their vehicles on the plaintiffs' estate.

On the count for misrepresentation as noted in the findings judgment on count three of the counterclaim is for the plaintiffs for the reasons stated.

The Clerk may incorporate these provisions into the docket by reference in accordance with Rule 79(a).

SO ORDERED.

DATED:   May 30, 2001

Francis C. Marsano
Justice, Superior Court

STATE OF MAINE                                SUPERIOR COURT
PENOBSCOT, SS.                                Docket No. CV 99-112


Shirley MacDougal, et al,        )
            Plaintiff,           )
                                 )
                                 )
                                 )
        v.                       )        **ORDER ON MOTION TO STRIKE**
                                 )        **AND FOR SUMMARY JUDGMENT**
                                 )
                                 )        *TITLE TO REAL ESTATE INVOLVED*
John Reinzo, et al,              )
            Defendant.           )
                                 )
        v.                       )
                                 )        ┌─────────────────────────────┐
                                 )        │  **FILED AND ENTERED**      │
Evelyn Leonard, Paul             )        │  **SUPERIOR COURT**         │
Wallace, et al.                  )        │                             │
                                 )        │     APR 0 6 2001             │
    Third Party Defendants )              │  PENOBSCOT COUNTY           │
                                          └─────────────────────────────┘


    The parties to this law suit are owners of property on the westerly shore of Cold Stream Pond in Enfield, Maine. It appears that the Defendants own the most southerly of the lots in question. Contiguous northerly is the property of the Plaintiffs and the 3rd parties own next northerly, Evelyn Leonard owning southerly of the Wallace lot[1].

    This case began in May of 1999 when the Plaintiff responded to a self help remedy implemented by the Defendants to establish their estate. Such action is not unusual in real estate cases and is one of the reasons that the rules of pleading are applied differently in them. The complaint seeks relief primarily injunctive in nature which relates to an easement

---

1. That appears on Exhibit E of the Statement of Undisputed Material Facts. It is a copy of the relevant tax map. It is also shown on the Day survey which is disputed. The relative position of the Plaintiff's and the Defendant's lot appear on Exhibit A of the MacDougal Affidavit.

claimed to be available to all of the parties to this action. It also seeks injunctive relief allowing what appears to be a former joint septic system to continue.

The Defendants answer establishes that they constructed a gate and a fence which would have interrupted plaintiffs use of the driveway they claim is included in their grant. Moreover, Defendants admit that they graded their land. That grading is a matter of concern to the Plaintiffs.

Matters proceeded slowly, to say the least. At the end of 1999, the 3rd Parties were being brought into the action. Philip Jordan, a real estate attorney had been designated as an expert by the Plaintiffs. His deposition was taken on March 17, 2000.

On April 18, 2000 Defendants designated Attorney Nathan Dane III and in their '26(b)(4)' statement it was suggested that he would opine that there was no legal grant to the driveway, which apparently is referred to as the 'horse shoe drive'. Defendants also listed an appraiser, Mary Smart and a surveyor, Gilbert Viitala. A motion has been filed by the Plaintiffs and the 3rd Parties to list Richard Day as a surveyor, though it is also argued that he should be allowed to opine about the numbers of easements which the instruments to be admitted legally create. Most of those deeds are attached to the Motion for Summary Judgment.

The Defendants response to the Motion for Summary Judgment was a Motion to Strike. The Motion is in two pages and cites neither rule nor authority for the daunting attack on the Plaintiffs' motion. Its premise is that the deposition of Mr. Jordan does not support the "two easement" argument made by the Plaintiffs. Without specific reference to any language of Mr. Jordan and rather by page incorporation "[A]t pages 12 through 19 . . . Mr. Jordan clearly and unequivocally testified that the relevant source deeds describe one, and only one, right of way". That statement flies in the face of the testimony: "Q: . . . what you're concluding is there is one easement set forth in all of these deeds . . . ? A: "Well, there are two in the two chains of title."

The two lawyers then engaged in what can most charitably be described as "lawyer talk" about dominant and servient estates. However,

a primary reference is to the Mortgage Certification Sketch which is Exhibit #4 at pages 19 -21. The language of the questions and answers demonstrate that the Page Road was accepted as a legal and independent estate. The 'horse shoe' drive was the right of way in dispute. Its course was east of the MacDougal shed and west of the MacDougal house. Thus the characterization by Defendants' lawyer fails.

Moreover, the failure to respond to the Plaintiff's Motion for Summary Judgment must be considered as well. However, that does not mean that Plaintiffs prevail.

Given that this is a real estate matter, real estate law must be considered. Neither party has made reference to Rule 80A M.R.Civ.P. But that would not be unusual because it incorporates 14 M.R.S.A. §§ 6651-6658 only by reference. It is 14 M.R.S.A. §6651's last sentence which is of significance. It reads: "A person in the enjoyment of an easement is in possession of real property within the meaning and for the purposes of this section."[2]

This Court is aware of the Law Court's disdain for these statutes. "An action for a declaratory judgment is an appropriate vehicle for establishing rights in real property. The statute does not create a new cause of action. A source of jurisdiction to quiet title is found in 14 M.R.S.A. §§ 6651 - 61. The arcane intricacies found in the procedural requirements of these provisions represent a trap for the unwary." See Hodgdon v. Campbell, 411 A.2d 667 (Me. 1980). The Court went on to note ". . . both fairness and the nature of declaratory relief dictate that the allocation of the burden of proof in declaratory judgment actions must be determined by reference to the substantive gravamen of the complaint." Id. The same is true under real actions premised on Rule 65 M.R.Civ.P.

Given the foregoing, the Court is satisfied that the Plaintiffs have shown cause why the Defendants should now proceed to establish that there is no easement in the area claimed by the Plaintiffs. That is, the Court is satisfied the Plaintiffs have made a prima facia showing of title and location as well as scope of use of the 'horse shoe' driveway shown on

---

3. Defendant could have used 14 M.R.S.A. § 6652.

4

Jordan Deposition Exhibit #4.

The issues to be tried also involve surface water diversion which will be impacted by the scope of the use of the easement, if the Plaintiffs prevail. See generally Johnson v. Whitten, 384 A.2d 698 (Me. 1978) which cites Morrison v. Bucksport & Bangor R.R., 67 Me. 353, 355-356. It is excerpted in Johnson, supra as follows: "It is well established that any proprietor of land may control the flow of mere surface water over his own premises, according to his own wants and interests, without obligation to any proprietor either above or below. . . . He may prevent surface water from coming upon his land according to its accustomed flow whether flowing thereon from a highway or any adjoining land." Id, 700.

This order then is a scheduling order. The Defendants shall proceed with their case recognizing that the Plaintiffs have established a prima facie case. They may rebut that case, including proving that the septic system was permissive use only. Plaintiffs and 3rd Party Defendants may be heard in rebuttal to Defendant's case or any part thereof.

Defendants may depose Richard Day who may testify within the scope of his qualifications.

The Defendants' Motion to Continue is denied with leave granted to renew it if Defendants' counsel is actually in trial when this matter is reached.

The Order will be: Defendants' Motion to Strike is denied. Hearing shall be in accordance with this Order. Defendants may depose Richard Day who may testify within the scope of his qualifications. The Defendants' Motion to Continue is denied with leave granted to renew it if Defendants' counsel is actually in trial when this matter is reached. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R.Civ.P Rule 79 (a).

April 6, 2001

_____
FRANCIS C. MARSANO
JUSTICE, SUPERIOR COURT

Date Filed ___5/28/99___ ___PENOBSCOT___ Docket No. _____ CV-99-112

County ___10/10/00–THIRD PARTY DEF WILLIAM LEONARD___

Action _CIVIL – PERMANENT INJUNCTION_ COUNTERCLAIM   DISMISSED

ASSIGNED TO JUSTICE MARSANO THIRD PARTY COMPLAINT

SHIRLEY M. MACDOUGALL and JAMES A. MACDOUGALL

JOHN E. REINZO and JOAN K. REINZO

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| CUDDY & LANHAM<br>470 EVERGREEN WOODS<br>BANGOR ME 04401<br>BY: Kevin M. Cuddy, Esq. | Eaton, Peabody, Bradford & Veague<br>PO Box 1210<br>Bangor, Maine 04402-1210<br>BY: Thad B. Zmistowski, Esq.<br>FOR: Defendants |

| Date of Entry | |
|---|---|
| 5/28/99 | Complaint filed. |
| 6/1/99 | Case File Notice postcard forwarded to Plaintiff's counsel. |
| 6/21/99 | Defendants' Motion for Enlargement of Time In Which to File Responsive Pleadings to Plaintiffs' Complaint Filed. |
| 6/23/99 | Order Filed. Wherefore, Defendants, John E. Reinzo and Joan K. Reinzo, respectfully request that this Court issue an order enlarging the period in which they have to file responsive pleadings to Plaintiffs' Complaint from June 22, 1999, to and including June 29, 1999. ORDER DENIED. (Order dated 6/23/99). (Mead, J.) Copy forwarded to attorneys of record. |
| 6/24/99 | Defendant's motion to Reconsider filed. |
| 6/25/99 | Order filed. Upon Defendants' Motion to Reconsider, Motion GRANTED. Answer due to be filed June 29, 1999. (Mead, J.) Copy forwarded to attorneys of record. |
| 6/29/99 | Defendants' Affirmative Defenses, Answer to Complaint and Counterclaim Filed. |
| 7/1/99 | Scheduling Order Filed. Discovery Deadline is March 1, 2000. (Mead,J) Copy forwarded to all attorneys of record. |
| 7/9/99 | Notification of Discovery Service filed by Plaintiffs, First Set of Interrogatories and Answer and Affirmative Defenses to Counterclaim. |
| 7/9/99 | Answer and Affirmative Defenses to Counterclaim filed by Plaintiffs. |
| 7/19/99 | Notification of Discovery Service filed by Defendants: Notice of Deposition of Shirley M. MacDougall, Notice of Deposition of James A. MacDougall. |

(Over)